(No. 30941.—

HERBERT R. CARTER *et al.,* Appellees, *vs.* WILLIAM G. MICHEL *et al.,* Appellants.

*Opinion filed September 22, 1949.*

CRAMPTON, J., dissenting.

NEWEL MECARTNEY, and WILLIAM J. POWERS, both of Chicago, for appellants.

G. A. BOSOMBURG, of Chicago, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This cause comes to the court under a leave to appeal granted to William G. Michel and Margaret Michel, his wife, hereafter referred to as defendants, under section 76 of the Civil Practice Act.

Herbert Carter and Elizabeth A. Carter, his wife, hereinafter referred to as plaintiffs, are the owners of lot 8 in block 4 in Walter S. Dray's Addition to Park Manor, commonly known as 7118 South Vernon Avenue in Chicago. The defendants are the owners of the adjoining property described as lot 7 in block 4 of said addition, commonly known as 7116 South Vernon Avenue. The plaintiffs filed a complaint in the circuit court of Cook County, praying the court to establish an easement of passageway over the property of defendants in favor of the plaintiffs. From a decree establishing the existence of such easement and enjoining the defendants from obstructing the use of the passageway the defendants appeal.

South Vernon Avenue in Chicago is a north and south highway in the 7100 block, in which are lots 7 and 8 owned by the defendants and plaintiffs. Lot 7, bearing the number of 7116 Vernon and owned by defendants, is improved with a two-story flat building, the ground floor of which is occupied by defendants and the remaining flat occupied by a tenant. Lot 8, owned by plaintiffs and designated as 7118 South Vernon Avenue, has a three-story building with the plaintiffs occupying the third floor and tenants the other two floors. The fronts of the buildings are set back from the sidewalk and face Vernon Avenue. A walk four feet wide and equally distributed on each side of the common boundary line of the two lots extends from the street walk to the buildings. Each building covers the full width of the lot with the exception of a six-foot passageway between the two buildings extending to the rear of the buildings for a distance of 29.04 feet. One half of the common passageway is on each lot and the

passageway is open to the sky, thus also serving the purpose of a light well for both buildings. The passageway does not end at 29.04 feet from the front of the building, but a strip three feet in width, located on the property of defendants, makes a short angular descent to the north and continues west to the rear of the building and then continues west as a walk to a public alley in the rear of both properties. This three-foot portion of the passageway is entirely on the property of defendants.

The master found, and the evidence so shows, that the buildings now standing on the premises of defendants and plaintiffs were, when originally erected, so constructed as to have a common archway and the common passageway heretofore described. The passageway, which is clearly visible, has been used for at least twenty-four years as a common passageway by various people including the occupants of both buildings involved. The premises of plaintiffs at 7118 South Vernon Avenue contain no side entrance, and the passageway represents the only way by which persons can gain access on level ground from the front of the lot to the rear of the lot or from the rear of the lot to the front without trespassing upon the property of others or without going through the first floor flat.

It appears from the record that the properties were under unified ownership in 1914 and that the last common owner of the property was Eugene A. Hagel who had both properties registered under the Torrens system. Sometime prior to 1936, Eugene A. Hagel conveyed the property to his son, Eugene M. Hagel, who in turn conveyed by warranty deed the premises known as 7116 South Vernon Avenue to the defendants. The deed did not show any easement on behalf of the grantor, Eugene M. Hagel, or the occupants of the premises at 7118 South Vernon Avenue. The defendants had their property registered under the Torrens system in 1936. In 1942 Eugene A. Hagel sold the properties at 7118 South Vernon Avenue to the

plaintiff, Elizabeth Carter, who at that time was not married but represented by Herbert R. Carter, later her husband. After the purchase of 7118 South Vernon Avenue by the plaintiffs, the occupants of the two buildings continued to use the passageway as it had been used in the past. The use of the passageway was open and uninterrupted by the occupants of both buildings and by various other people until on or about June 28, 1947.

On June 28, 1947, the defendants obstructed the passageway by erecting a wood post fence on the lot line from the alley eastward for a distance of approximately 35 feet to the northwest corner of plaintiffs' building, the fence being four feet in height and composed of wooden boards supported by a line of wooden posts. At the same time the defendants removed, without the permission of plaintiffs, three clothes poles which were the property of the plaintiffs and which were in the ground at or near the lot line, and also broke a drain pipe on the rear of the lot at or near the lot line.

The fence erected by the defendants bars and obstructs the use of the passageway by the tenants of plaintiffs' building and cuts off the route which they and other people have to reach the public alley in the rear of the premises. The exits to the alley in the rear of 7118 South Vernon Avenue are otherwise blocked by a garage and by a concrete incinerator and ash pit. The plaintiffs testified at the hearing before the master that the fence presents a hazard to life and limb of the occupants of plaintiffs' building in cases of emergency and it also prevents servicemen and other persons from reasonably reaching meters or the rear of the building. Plaintiffs further testified that when they were in the rear of the building at 7118 South Vernon Avenue they could not reach the front of said building without passing through the apartments of their tenants or climbing to their apartment on the third floor and returning to ground level by the front stair. On October 20,

1947, plaintiffs filed with the registrar of titles of Cook County an affidavit in general number L. R. 21563, in the matter of the application of Eugene M. Hagel to register title to real estate in accordance with an act concerning land titles, (Ill. Rev. Stat. 1947, chap. 30, par. 45, *et seq.,*) setting forth their interest in the registered land, how and under whom derived and the character and nature thereof. At the same time, plaintiffs filed this complaint in the circuit court of Cook County, in which they asked that defendants be restrained from continuing to obstruct the passageway and praying for an order for the removal of the fence. They further prayed that their title to an easement in the passageway be quieted by the registrar of titles, Cook County, and for the registration of the easement right. Subsequent complaints were filed by the defendants herein which are not pertinent to the opinion, inasmuch as it appears that the causes involved were abandoned.

On the evidence the master found that from the time the two lots were first held in unity of title the use of the passageway was open, visible, continued and uninterrupted, and as a result a permanent easement was imposed on the premises at 7116 South Vernon Avenue in favor of the premises owned by plaintiffs at 7118 South Vernon Avenue. The master further found that at the time of the severance of the two lots from common ownership the right to continue to use the easement arose by implication of law, inasmuch as the use was, at that time, visible, open, notorious and continuous and was necessary for the reasonable enjoyment of the premises at 7118 South Vernon Avenue. The master further found that the existence and continuance of the implied easement was not dependent on registration under the Torrens system, because it was created by implication of law, and that the defendants, although fully aware and in possession of all of the facts, did not interfere with that use for more than ten years and thereby confirmed by their conduct the lawful exist-

ence of the easement. The chancellor adopted the findings of the master and entered a decree in accordance with the recommendation.

Contending that the decree of the chancellor was erroneous, the defendants argue: (1) that it was error for the master and the court to find an easement because of the ten-year usage; (2) that the defendants and plaintiffs did not derive title from a common owner; (3) that the finding that the fence in question precludes entrance from the rear of the premises at 7118 South Vernon Avenue is erroneous; (4) that certain testimony was erroneous; (5) that there is no hazard to life and limb as a result of the fence; (6) that the master erred in ruling out testimony as to the intent of the grantors of this property; (7) that it was error on the part of the chancellor to approve the findings of the master and to assess master fees against the defendants.

It is not necessary to discuss or review the law pertaining to easement claims based on prescription or adverse possession. It is obvious that the grant on which the claim of the plaintiffs is based is on an implied grant in the nature of an easement. Such a grant arises by implication of law. Where a single owner of two parcels of property having a common right of way, conveys one or both without reference in the grant or grants to the servitude, in the absence of evidence to the contrary it is customarily held that by implication the owner will be presumed to have intended to include in his grant all the appurtenances and rights necessary for the reasonable enjoyment of the property granted in the form existing at the time of the transfer. (*Bihss* v. *Sabolis*, 322 Ill. 350. Also see *Leitch* v. *Hine*, 393 Ill. 211.) It is obvious from the language of these cases that the failure to include a reference to the easement in the deeds from Eugene M. Hagel and Eugene A. Hagel to the parties here is not conclusive of the rights as to the implied grant.

The essential elements which must exist to create an easement by implication upon severance of ownership are as follows: (1) there must be separation of the title; (2) before the separation occurs, the use which would give rise to an easement must have been so long continued, obvious or manifest to that degree which will show the use was meant to be permanent; and (3) it is necessary that the use of the claimed easement be essential to the beneficial enjoyment of the land granted or retained. Additionally, the authorities are in agreement that such right extends no further than to servitudes of a permanent nature well known or plainly apparent to the eye, from the character of which it may be presumed the owner was desirous of their preservation as servitudes, evidently necessary to the convenient enjoyment of the property to which they belong and not for purposes of pleasure. (*Leitch* v. *Hine*, 393 Ill. 211; *Fossum* v. *Stark*, 301 Ill. 99.) The claimed easement need not spring out of real necessity in order to enjoy the estate granted. It is sufficient that it be highly convenient and beneficial to the estate. *Koubenec* v. *Moore*, 399 Ill. 620, and cases cited therein.

There is no question in this case but what the first element is present, i.e., separation of the title. As to the remaining requirements, the use of the passageway had been in existence since 1914 and continued through the unity of title down to severance and from such time until 1947. No reservation was made in the deed of the easement nor was the easement expressly negatived by the deed to the appellants. The rule is well established in this State that, while no easement exists so long as there is unity of ownership because the owner of the whole may at any time rearrange the relationship of the several parts, nevertheless, the moment a severance occurs in the sale of a part, the right of the owner to redistribute the properties of the respective portions ceases. An easement of servitude is created corresponding to the benefits and burdens existing

at the time of the sale, as the parties are presumed to contract in reference to the condition of the property at the time of the sale and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts. (*Walters* v. *Gadde,* 390 Ill. 518; *Bihss* v. *Sabolis,* 322 Ill. 350.) The record discloses an extensive use of the properties from 1914 until 1936 and from 1936 until 1947. The use during that time had been continuous, open and obvious and was highly convenient and beneficial to the occupants of both properties. This is sufficient to establish the presence of the second requirement, inasmuch as such use was not required to be absolutely necessary. (*Walters* v. *Gadde,* 390 Ill. 518; *Fossum* v. *Stark,* 302 Ill. 99.) The extensive time over which the passageway was used indicates that such use was meant to be permanent. The testimony in the record indicates the hardship that has been placed upon plaintiffs by reason of the obstruction erected by the defendants. This proof is sufficient to establish the third requirement that the use be essential to the beneficial enjoyment of the land granted.

The situation presented here is not new to this court. In *Walters* v. *Gadde,* 390 Ill. 518, a situation was presented substantially in accord with the facts of the instant cause. We there affirmed that portion of the decree of the lower court allowing an implied grant for the use of a common driveway. A passageway easement was also held to have been established by implication under circumstances similar to the instant cause in *Fossum* v. *Stark,* 302 Ill. 99. It would appear, therefore, that the plaintiffs have established their right to an easement by implication of law unless the situation is affected by the registration of the properties under the Torrens system.

In this regard the defendants argue that under section 41 of the Torrens Act (Ill. Rev. Stat. 1947, chap. 30, par. 85,) no title adverse to the registered owner can be

acquired by adverse possession, and that even a true easement would not be valid after application of the limitation period of the Torrens Act inasmuch as the quoted section is binding on all persons in the past and future. They argue that section 26 of the act (Ill. Rev. Stat. 1947, chap. 30, par. 70) requires that the decree when entered be forever binding upon all persons mentioned by name or included in "All whom it may concern," and that there are no exceptions. They further claim that under the Torrens Act all changes are of no validity unless registered. (Ill. Rev. Stat. 1947, chap. 30, par. 84.) The defendants argue from this section that it was the intent of the legislature to bar all claims on lands registered under the act unless such claims are also registered at the time or within the limitation period.

With this construction we cannot agree. To adopt the contention of the defendants would forever bar any rights in land registered under the Torrens system arising subsequent to the date of registry, regardless of whether or not such rights were attained under the law. It is to be noted in the instant cause that the implied grant arose at the date of severance of unity of title and continued to ripen for ten years. The implied grant was in existence and was ripening daily all during the time the property was owned by Eugene M. Hagel and his successors, the defendants, and also during the time the property was owned by the plaintiffs. The implied grant was in effect in 1942 when the property was purchased by the plaintiffs and defendants made no move to notify plaintiffs that the grant was not actually in existence or that they considered the use of the passageway as permissive only. Insofar as the plaintiffs are concerned, an affidavit was filed by them within a comparatively short time after the use of the passageway was obstructed. Plaintiffs were not parties to the original registration nor did they acquire interest in the properties until six years subsequent to the registra-

tion of the property of the defendants. We cannot hold that the Torrens Act bars an implied grant arising under implication of law which came into existence at the moment of severance and registration by the defendants and which ripened for a subsequent period of ten years.

We have no disagreement with the decree of the circuit court on matters of law. As to matters of fact, we have long held that the master's findings when approved by the chancellor will not be disturbed unless manifestly against the weight of the evidence. (*Chambers* v. *Appel,* 392 Ill. 294.) The evidence here supports the findings. As to allegations of error based on the refusal of the master to accept testimony offered by the defendants, we have examined the record with care and find that such evidence deals with the undisclosed intent of the Hagels and the defendants which were never made known to the plaintiffs. We, therefore, find no error in these rulings.

For the reasons stated herein, the decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*

Mr. JUSTICE CRAMPTON dissenting:

The record in this case discloses the buildings on the two lots in question were erected thereon, with the incorporated passageway, by the then owner of both lots. From 1914 until 1936 the two lots were under the unified ownership of different individuals of the Hagel family, and the passageway was used by them and their tenants. Eugene M. Hagel, as the last holder of the unity of seizin, sold lot 7 in the fall of 1936 to appellants by warranty deed which contained no reservation of an easement for the benefit of the then present or future owners of lot 8. Eugene M. Hagel thereafter transferred lot 8 to his father, Eugene A. Hagel, and the latter in turn sold lot 8 to appellee Elizabeth Carter (then Sheridan) in the fall of

1942 by deed which did not contain any provision concerning or reference to the use of the passageway over lot 7.

The master and chancellor found the passageway had been used many years as a common passageway by the various owners and tenants of both buildings; that the use of the passageway was open, visible, continued and uninterrupted; that the way was necessary for the reasonable enjoyment of the adjoining property; and that all the elements were present to impose an easement by implication upon lot 7, and findings were made and a decree entered accordingly.

One of the main elements of such an implied grant is that before a separation of the title occurs the use must have been so long continued, obvious or manifest to that degree which will show the use was meant to be permanent. Permanency can only be based upon the length of time over which the passageway has been used by others. This, of course, does not include tenants or licensees. During much of the time since 1914 there was unity of seizin in Eugene M. Hagel, the last time as late as 1936. His ownership of both lots was equal in duration, quality and all other circumstances of right.

The law is settled that where there is a unity of absolute title to and possession of the dominant and servient estates in the same person it operates to extinguish such easement absolutely and forever, for the reason that no man can have an easement in his own land. 17 Am. Jur., Easement, sec. 139; *Smith* v. *Roath,* 238 Ill. 247.

Therefore, not until the separation of title by Eugene M. Hagel in 1936 can we look to the facts of ownership, possession and use to determine whether that use was meant to be permanent. The appellees did not acquire title to lot 8 until 1942. It cannot be said, at the time of the purchase by appellees in 1942, that the passageway

622

had been used (since 1936) for so long a continued and uninterrupted period of time to show the use was meant to be permanent. It would seem from the facts the contrary appears and no rights can be acquired by appellees in the property of appellants by the mere permissive use since 1942.

Likewise, mere convenience to an adjoining property owner cannot impose the right of use or easement over the land of an adjoining owner. It is held in some cases that another element of an implied easement is that it be "necessary," in others, "highly convenient and beneficial." No precise definitions can be stated to bring a case within either of the above rules. There is a wide range between the two. The law should give some consideration to the holder of the servient estate in determining what is necessary and highly convenient and beneficial. In the placing of easements by implication against the property of another, equity should place the requirements nearer the necessitous end of the range rather than the convenience and beneficial end thereof.

The imposition of an easement here seriously affects the absolute, free and untrammeled ownership of title to lot 7. At the time the premises were purchased it would have been a simple matter to have caused to be included in the deeds any rights or easements granted or reserved, in accordance with the understanding and agreement of the parties. This was not done. In fact, proof was offered tending to establish there was no such agreement or understanding and such proof indicates that, at the time appellants made the purchase, they would not consummate the transaction or accept title if the premises so purchased by them contained any such reservations.

For the reasons assigned the decree should be reversed.