JOSEPH SWIETON *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* HENRY LANDOCH *et al.*, Defendants and Counterplaintiffs-Appellees.

First District (5th Division)    No. 80-2297

Opinion filed March 12, 1982.—Rehearing denied May 28, 1982.

Lawrence W. Krupa, of Chicago, for appellants.

Marshall J. Belgrad, of Skokie, for appellees.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, Joseph Swieton and Donna Swieton, filed a complaint for ejectment on an encroachment upon their property. Defendants, Henry Landoch and Emma Landoch, filed a counterclaim for declaratory relief seeking the imposition of an easement by prescription or implication. After a bench trial the court entered judgment granting defendants an easement by implication. Plaintiffs appeal.

The issue on appeal is whether defendants have established an easement by implication by clear and convincing evidence. The accompanying diagram is provided to facilitate comprehension of the following facts.

294

"A" — Plaintiffs' parcel (Lot 11 except the South 30 feet)

"B" — Defendants' parcel (The South 30 feet of Lot 11)

In 1971 the plaintiffs purchased a single-family residence located on Lot 11 except the South 30 feet (plaintiffs' parcel), which lot fronts on Narragansett Avenue and is bounded on the north and east by an alley. To the immediate south, and adjacent to the plaintiffs' property, is another house located on the South 30 feet of Lot 11 (defendants' parcel), also fronting on Narragansett Avenue. This latter parcel had been owned and occupied from 1971 by Michael LaBrose (LaBrose) until he sold it to defendants, Henry and Emma Landoch, in February of 1976. At the time of the defendants' purchase a white wooden picket fence stood between the respective back yards. The fence extended in an east-west direction from the eastern alley line to a point adjacent to the rear of the plaintiffs' home; however, no fencing existed between the dwellings themselves.

The defendants' home has a front entrance on Narragansett Avenue and a side door on its north side, the threshold of which is several feet higher than ground level. The side door exits onto a concrete stoop from which several steps on the westerly side allow descent to the front walk and steps on the easterly side allow descent to the rear service walk of defendants' house. A concrete walk installed by defendants' predecessor LaBrose extends west from the stoop steps and from one building to the other. Located within the walk at the west base of the steps is a sewer catch basin for the defendants' home. Another concrete service walk extends from the alley on the east across the entire length of the rear yard and continues along the north wall of defendants' home to the east steps of the stoop.

Soon after taking title to their real estate, the defendants decided to replace the white picket fence, which they assumed to be located on their own land, and entered into a contract with Tru-Link Fence Company to erect a metal chain link fence between the respective properties. Henry Landoch and his brother removed the existing white wooden picket fence and a few days later workers for Tru-Link placed metal upright posts in position. However, it became apparent that the chain link fence would be of a greater length than the picket fence and would divide the area between the houses of the parties—an area which had previously been open and undivided.

At a point in time prior to the attachment, erection and completion of the chain link fencing itself, Donna Swieton made several protests concerning the positioning of these posts to Emma Landoch, complaining that the posts were on her property. The defendants then consulted their original survey, dated January 21, 1976, and prepared in connection with the acquisition of their real estate. They discovered for the first time that it failed to portray the front walkway, the catch basin, the stoop and its steps, the rear service walk, and the white picket fence. However, the erection of the fencing went ahead and was completed in February 1976.

The defendants obtained a second survey on March 12, 1976, which showed that the entire length of newly installed fence, as well as several inches of the defendants' stoop and stairs and sidewalk, protruded onto plaintiffs' side of the property line.

In June 1976 plaintiffs filed an action in ejectment against defendants, asserting that encroachments existed, and that defendants refused to remove the chain link fence and the protruding portions of the walks and stoop after repeated demands to do so. Plaintiffs prayed for a judgment for possession and damages. Defendants' amended answer raised as affirmative defenses the existence of a constructive easement over plaintiffs' property and that plaintiffs' complaint was barred by laches. Defendants prayed dismissal of plaintiffs' complaint, a constructive easement in perpetuity to run on plaintiffs' land, and reformation of the original plat to show defendants' residence, structures and improvements located entirely upon the real property of the defendants, and all other relief deemed just. Defendants also filed a counterclaim for declaratory relief imposing an easement by prescription or implication. Plaintiffs' reply to defendants' answer denied the existence of any easement on plaintiffs' property.

The evidence introduced at trial showed that both parcels of real estate originally were contained in and owned as one lot, and at all times herein were registered under the Torrens system. Neither the Torrens certificates of title nor any deeds contained any reference to the easements claimed herein.

In 1948, title to all of Lot 11 was acquired by Bessie Rosenthal who on March 12, 1952, conveyed by quitclaim deed to Herbert Rosenthal and Roy Schoenbrod the South 30 feet of Lot 11 (defendants' parcel), which deed was filed for record on May 16, 1952. Rosenthal and Schoenbrod conveyed defendants' parcel to Frank and Anna Miller on May 31, 1955, as evidenced by document filed with the registrar of titles.

The plaintiffs' claim of title also goes back to Rosenthal and Schoenbrod, who conveyed plaintiffs' parcel in a deed dated February 8, 1954. The trial record is devoid of any deed showing a conveyance of plaintiffs' parcel from Bessie Rosenthal to Herbert Rosenthal and Roy Schoenbrod. However, prior to trial defendants filed an "Amended Request to Admit Facts and Genuineness of Documents" which plaintiffs failed to answer. The facts requested to be admitted included that as of August 4, 1948, Bessie Rosenthal owned all of Lot 11 in fee simple; that on or about March 12, 1952, she executed a quitclaim deed for Lot 11 in its entirety to Herbert and Kaye Rosenthal and Barbara and Roy Schoenbrod; that on or about March 10, 1952, two building permits were issued to construct single-family residences on Lot 11; that subsequent to the erection of the two residences the Rosenthals and Schoenbrods divided Lot 11 into two

parcels; that they first conveyed the plaintiffs' parcel on or about February 8, 1954, and then conveyed defendants' parcel on or about May 31, 1955. Finally, the request to admit asserted that at the time of the improvements to the realty all of Lot 11 was owned by common owners, the Rosenthals and Schoenbrods. At the beginning of the bench trial the court stated that as plaintiffs failed to respond to defendants' request to admit facts, it took the facts stated therein to be admitted. Plaintiffs' counsel made no objection. The evidence included testimony that the two homes were constructed on the property in 1953.

Following trial the court entered an order finding that there was an admitted encroachment as to the sidewalk, the catch basin, the concrete stoop and steps and the chain link fence; that a permanent easement by implication existed as to the concrete stoop and steps, the sidewalk between the residences and the catch basin, but not as to the chain link fence. The court ordered that the Cook County registrar of titles memorialize the easement by implication upon the Torrens certificates of title of both the plaintiffs and defendants. Plaintiffs appeal those portions of the order creating and impressing an easement by implication and its memorialization upon their title.

OPINION

■■ Preliminarily, we address plaintiffs' contention that the court improperly granted equitable relief here because defendants' counterclaim, upon which this relief was granted, was not properly before the trial court. Plaintiffs base their argument on the absence in the record of any order allowing defendants to file their counterclaim. We find no merit to this contention, however, as the record clearly supports the presumption which exists in favor of the regularity of the proceedings in the trial court. (*Witvoet v. Berry* (1977), 48 Ill. App. 3d 485, 359 N.E.2d 1117.) The counterclaim, included as part of the record on appeal, was time and date stamped and filed with the clerk of the circuit court. Furthermore, at the beginning of trial the court specifically denominated and treated plaintiffs as "counterdefendants" and defendants as "counterplaintiffs." Noting that the encroachments were admitted by defendants, the court stated that the burden of going forward with the proof would rest with defendants who sought the imposition of the easement. It must be noted that defendants' answer to plaintiffs' ejectment complaint denied the existence of the encroachments. Such encroachments were admitted in defendants' counterclaim. Plaintiffs, who would have the burden of going forward with the proof in an ejectment action, never objected to these designations nor to this procedure. Finally, plaintiffs' own notice of appeal designates themselves as "Plaintiffs and Counter-defendants" and also designates defendants as "Defendants and Counter-plaintiffs." We can only

conclude from the conduct of the court and the parties as evidenced by the record that defendants' counterclaim was properly before the court. We proceed, therefore, to consider whether the trial court properly granted an easement by implication as requested in the counterclaim.

The rule is well settled that where the owner of a single tract has arranged it so that one portion thereof derives a benefit from the other of an apparent and continuous character, and then sells one of such parts without mention being made of these incidental uses, the purchaser takes the portion sold with all of the benefits and burdens which appear at the time of sale to belong to it. (*Gilbert v. Chicago Title & Trust Co.* (1955), 7 Ill. 2d 496, 131 N.E.2d 1; *Frantz v. Collins* (1961), 21 Ill. 2d 446, 173 N.E.2d 437.) The moment the severance occurs easements or servitudes are created corresponding to the benefits and burdens mutually existing at the time of sale. *Gilbert.*

As pointed out in *Carter v. Michel* (1949), 403 Ill. 610, 617, 87 N.E.2d 759, 762, the essential elements which must exist to establish an easement by implication are: "(1) there must be separation of the title; (2) before the separation occurs, the use which would give rise to an easement must have been so long continued, obvious or manifest to that degree which will show the use was meant to be permanent; and (3) it is necessary that the use of the claimed easement be essential to the beneficial enjoyment of the land granted or retained." This "apparent use" does not necessarily mean notorious visibility, especially when a pipe, sewer, or drain is involved, but refers rather to a use which is either known or could have been discovered upon reasonable inspection. (*Frantz.*) The burden rests on the party seeking the easement to establish the elements necessary to raise an easement by implication. *Partee v. Pietrobon* (1957), 10 Ill. 2d 248, 139 N.E.2d 750.

Plaintiffs assert that defendants failed to establish that the use giving rise to the easement occurred prior to the separation of title in the two parcels. Plaintiffs argue that the evidence introduced at trial only shows that Bessie Rosenthal took title to all of Lot 11 in 1948 and conveyed defendants' parcel to Rosenthal and Schoenbrod on March 12, 1952, and that no deed showing a conveyance of the remaining portion of Lot 11 to Rosenthal and Schoenbrod was introduced into evidence. According to plaintiffs the failure to introduce the latter establishes that the separation of title occurred in 1952, prior to the construction of the homes in 1953. However, plaintiffs' argument disregards their failure to respond to defendants' request to admit facts and their resulting admission, not objected to at trial, that Bessie Rosenthal conveyed all of Lot 11 to the Rosenthals and the Schoenbrods in 1952. (Ill. Rev. Stat. 1979, ch. 110A, par. 216(c).) Furthermore, defendants on appeal have directed our

attention to, and have filed in this court, a certified copy of a deed filed with the registrar of titles whereby Bessie Rosenthal conveyed plaintiffs' parcel to Rosenthal and Schoenbrod on March 12, 1952. This document is a public record (Ill. Rev. Stat. 1979, ch. 116, par. 43.103) and as such we take judicial notice of it. (*Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 206 N.E.2d 709; *Lubershane v. Village of Glencoe* (1978), 63 Ill. App. 3d 874, 380 N.E.2d 890.) As Bessie Rosenthal conveyed both parcels, constituting all of Lot 11, to the same owners on March 12, 1952, there was a unity of ownership in the two adjoining parcels in Rosenthal and Schoenbrod when the homes were constructed thereon. While there is a unity of ownership the owner or owners may adapt or arrange the two adjoining properties in such a way that one may be charged with the burden of servitude for the benefit of the other. (*Cosmopolitan National Bank v. Chicago Title & Trust Co.* (1955), 7 Ill. 2d 471, 131 N.E.2d 4.) Thus, the date the unity of ownership (and the consequent authority to arrange and adapt the properties) ceases is the point of reference in ascertaining what servitudes, if any, have been imposed. (*Cosmopolitan National Bank.*) Here the conveyance of both parcels to Rosenthal and Schoenbrod continued a common ownership of both properties sufficient to indicate the ability to arrange and adapt the property in a manner sufficient with the rules of property in the establishment of an easement by implication. (*Cosmopolitan National Bank.*) Thus, the severance of title did not occur here until Rosenthal and Schoenbrod conveyed plaintiffs' parcel to a third party in a deed dated February 8, 1954, sometime after the construction of the two houses in 1953.

■ Plaintiffs additionally assert, however, that although the record establishes that the houses were built on the property in 1953, the record is silent as to when the now existing improvements were made for which an easement by implication was granted. Defendants concede as much suggesting that a logical inference would establish that the creation of the stoop, stairs, catch basin and sidewalk occurred simultaneously with the construction of the homes in 1953. However, resort to inference is unnecessary as plaintiffs have admitted by reason of their failure to respond to defendants' request to admit facts that at the time of the construction of the improvements to the realty in question, all of Lot 11 was owned by the Rosenthals and Schoenbrods. Therefore, despite plaintiffs' assertion to the contrary defendants established that the improvements to the property which would give rise to an easement by implication were made prior to the separation of title.

■■ Finally, plaintiffs assert that defendants failed to establish that "the use of the claimed easement [is] essential to the beneficial enjoyment of [defendants' property]." (*Carter v. Michel* (1949), 403 Ill. 610, 617, 87

N.E.2d 759, 762.) It is well established that the law does not require a showing of absolute necessity to support the imposition of an easement by implication over the lands of others, but it is sufficient that such easements be reasonable, highly convenient and beneficial to the dominant estate. (*People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 171 N.E.2d 599.) The catch basin provides access to the sewer system. Therefore, the benefit to defendants' property derived from the catch basin is self-evident and the grant of an easement for the catch basin was proper. However, a review of the record indicates that very limited testimony was introduced to establish that the easements in the stoop, steps and sidewalk, a matter of inches, were highly convenient and beneficial to defendants' property. The sole evidence presented consisted of Emma Landoch's testimony that she did not know if she would be able to fully open her side door if required to cut the stoop and stairs and to move her chain link fence flush with the cut stoop and stairs. Moreover, there is nothing in the record to show that defendants' use of their property is in any way enhanced by an easement in the sidewalk between the two homes insofar as it encroaches on plaintiffs' parcel. Implied easements cannot be raised upon meager facts (*Partee v. Pietrobon* (1957), 10 Ill. 2d 248, 139 N.E.2d 750) and likewise cannot be raised in the absence of facts.

For the reasons cited herein that portion of the judgment in favor of defendants granting an implied easement as to the catch basin is affirmed. That portion granting an implied easement as to the encroachment of the concrete stoop and stairs, and of the sidewalk between the residences is reversed, and the cause is remanded to the circuit court with directions to enter judgment therein in favor of plaintiffs and against defendants consistent herewith.

Affirmed in part; reversed in part and remanded with directions.

SULLIVAN, P. J., and LORENZ, J., concur.