KINCAID, APPELLEE, *v.* YOUNT, APPELLANT.

(No. C-820528—Decided April 13, 1983.)

Mr. *Jerry F. Venn,* for appellee.
Mr. *Terry M. Tranter,* for appellant.

BLACK, J. The single question raised in this appeal is whether an easement that arose by implication of law subsequent to the registration of title to the two parcels of real estate under R.C. Chapters 5309 and 5310 can be recognized and enforced against the alleged servient estate if the implied easement is not noted or memorialized on the register of titles. We answer the question in the negative.

Plaintiff, Ellery C. Kincaid, claims to have an implied easement across defendant John H. Yount's parcel under the circumstances disclosed by the record. Both parcels of land were part of a larger tract that had been registered on August 23, 1918, under R.C. Chapters 5309 and 5310 (also known as the land registration law, or Torrens system). The tract was served by a private easement or right of way known as Elston Road for access from and to Beechmont Avenue. In 1928, Griffith Lang purchased a portion of this tract, fronting one hundred and fifty feet on the east side of Elston Road. He built his residence on the middle part of this parcel and a driveway that converged with Elston Road along the south part of his frontage. The topography is such that the residence was at a higher elevation than Elston Road. There was adequate space to construct a driveway that would meet Elston Road directly west of the residence, but the ground sloped very steeply. Griffith Lang built the driveway angled in a southerly direction so as to traverse a gentler slope. This driveway has been used for ingress and egress by the occupants of Griffith Lang's residence from 1928 to date. No other means was ever used or even considered.

In 1935, Griffith Lang conveyed the south fifty feet of his parcel to his son John, including the lower part of the driveway and its juncture with Elston Road, but he failed to reserve an easement across John's parcel for ingress and egress. John built a residence on his parcel and used the driveway in common with his father, both of whom shared in maintaining it.

In 1964, plaintiff acquired the north parcel from Griffith Lang, who is his father-in-law. In 1978, defendant ac-

quired the south parcel, not directly but by mesne conveyance, from John Lang. The relative locations of the two parcels, the common driveway and Elston Road are shown on the schematic diagram (not to scale) attached as Appendix A to this opinion.

On May 10, 1981, defendant parked a Chevrolet van across the driveway at a point within his parcel, making it physically impossible for plaintiff to use it for ingress and egress. Until that day, the driveway had been used without hindrance for ingress and egress by the owners and occupants of plaintiff's parcel. Maintenance had been a cooperative matter between the occupants of the two parcels until after defendant's acquisition of the south parcel in 1978.

Plaintiff brought suit for, and was granted by the trial court, both a permanent injunction against interference with or obstruction of the driveway, and an order to the county recorder to enter an appropriate memorial of the driveway easement on the register of titles (a term which we use to include both the original and the duplicate certificates of title). Defendant's single assignment of error is that this judgment was erroneous. He

asserts that an implied easement cannot be acquired across registered land in the absence of any notation on the register of titles. We agree.

Implied easements have been recognized since 1851. *Morgan* v. *Mason* (1851), 20 Ohio 401. The evidence in the instant case is sufficient to prove that an implied easement arose across defendant's parcel under the standards laid down in the first paragraph of the syllabus of *Ciski* v. *Wentworth* (1930), 122 Ohio St. 487.[1] The "unity of ownership" was severed by Griffith Lang in 1935. Before that, the driveway had been so continuously and obviously used as to show it was intended to be permanent. The driveway easement is reasonably necessary to the enjoyment of the north parcel. Finally, the servitude was continuous, not temporary or occasional only.

The question, however, is whether this implied easement, never having been noted on the register of titles, can be recognized or enforced under the land registration law. The question is of first impression in Ohio.[2] The answer requires our interpretation of R.C. Chapters 5309 and 5310, because the effect of land registration is strictly a statutory matter.

---

[1] Paragraph one of the syllabus of *Ciski* v. *Wentworth, supra,* reads in full:

"While implied grants of easements are not favored, being in derogation of the rule that written instruments shall speak for themselves, the same may arise when the following elements appear: (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguised from a temporary or occasional use only."

[2] The Illinois Supreme Court resolved the question in favor of the dominant owner, holding that the Illinois Torrens Act does not

bar the creation of an implied easement that "came into existence at the moment of severance and registration" and ripened for a subsequent period of ten years. *Carter* v. *Michel* (1949), 403 Ill. 610, 620, 87 N.E.2d 759. We decline to follow that decision for two reasons: the Illinois Torrens Act may be significantly different from the Ohio land registration law, and we are convinced that the intent of the Ohio law is to make the register of titles the final proof of all "estates, encumbrances, and rights" with an absolute minimum of exceptions, despite whatever physical conditions and circumstances may be openly and clearly visible. We suggest that allowing the creation of easements by prescription or by implication without requiring notation on the register of titles will introduce uncertainties and doubts that are inimical to the purpose of the Ohio land registration law. For an illustration of the confusion that results

The purpose of the Torrens system is to create an absolute presumption that the register of titles speaks the last word about the title to land, eliminating all "secret liens and hidden equities," and making the language in the register of titles absolute proof of indefeasible title excepting only those encumbrances and claims noted therein. *Curry* v. *Lybarger* (1937), 133 Ohio St. 55 [10 O.O. 61]. This purpose is evidenced by a series of provisions in the Act. R.C. 5309.06 states that all lesser estates, vested or contingent, private easements and other interests, mortgages, liens and charges shall be noted on the original and duplicate certificates of title when the land is registered, except only as provided in R.C. 5309.28. Transferees of registered land are not charged with notice, actual or constructive, of any unregistered claim or interest; knowledge thereof shall not be imputed to the transferee as fraud; and no unregistered claim or interest shall prevail against a registered title taken bona fide for valuable consideration. R.C. 5309.34. The death of the registered owner requires special court procedures to change the register of titles, apart from and in addition to the administration of the estate in the probate court. R.C. 5309.45 and 5309.46. Whenever any encumbrancer intends to charge registered land, he must do it by "an instrument of encumbrance" or by affidavit, duly registered. R.C. 5309.47 and 5309.72. No title to registered land in derogation of that of the registered owner shall be acquired by prescription or adverse possession. R.C. 5309.89. Every transferee holds title subject only to the interests, estates, mortgages, encumbrances and liens which have been entered upon the registered certificate of title prior to the transfer, unless it is expressly otherwise provided in the transfer instrument. R.C. 5310.02.

The courts have held that these provisions bind the state and all political subdivisions in the state. *Kohrman* v. *Rausch* (App. 1956), 75 Ohio Law Abs. 193; *Cohn* v. *Celebrezze* (C.P. 1958), 9 O.O. 2d 23; *Lake Front-East 55th St. Corp.* v. *Cleveland* (C.P. 1939), 21 O.O. 1, affirmed in part and remanded on other grounds (App. 1941), 36 N.E. 2d 196, appeal dismissed (1941), 139 Ohio St. 138 [22 O.O. 127]. The land registration law is an exception to the mechanic's lien law, and such a lien is effective only from the day it is noted on the register of deeds. *Gough Lumber Co.* v. *Crawford* (1931), 124 Ohio St. 46; *Becker* v. *Wilson* (1929), 30 Ohio App. 340; *Mizner* v. *Paul* (1918), 30 Ohio C.D. 484, 29 Ohio C.C. (N.S.) 33. A lease of more than three years that is not noted on the certificate is ineffective against a bona fide purchaser for value. *Corvington* v. *Heppert* (1952), 156 Ohio St. 411 [46 O.O. 346].

Plaintiff contends that his rights arise from exceptions to the requirement for notation or memorialization of all encumbrances as set forth in R.C. 5309.28:

"Every applicant in a land registration case who without fraud on his part receives a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land, who takes a certificate of title for value and in good faith, shall hold such land free from all estates, encumbrances, and rights except those noted on the certificate and except any of the following estates, encumbrances, and rights which may be existing:

"* * *

"(C) Any highway, public way, or

---

from giving easements arising by prescription or implication precedence over a registered title, see Baalman, Easements Under the Torrens System (1944), 18 Austl. L.J. 186; Selby, Indefeasibility of Title Under the Torrens System — Acquisition of Easements by Prescription (1936), 9 Austl. L.J. 395; and Whalan, Light and Some Shade Cast on the Fraud and Omitted Easements Exceptions in the Torrens System Statutes, 1973 N.Z.L.J. 418.

private way laid out or acquired by law or otherwise, unless the certificate of title states that the nonexistence of such way, or the boundaries thereof, if the same exists, have been determined by the court;

"* * *

"(F) If there are easements or other rights appurtenant to a parcel of registered land which for any reason have not been registered, such easements or rights shall remain appurtenant, notwithstanding such failure to register, and shall be held to pass with the land."

Plaintiff's contention is that the driveway *sub judice* was a "private way laid out or acquired by law" under subsection (C) as well as an easement which was not registered under subsection (F). We are not persuaded. First, subsection (F) applies only to easements appurtenant to the registered land. It provides that when the registered land is the dominant estate with an appurtenant easement over a servient estate, the appurtenant rights continue in effect and pass with the "land." Thus, subsection (F) saves an appurtenant easement in favor of the dominant estate, but it does not either create, protect or save an easement across a registered servient estate. It does not subject the defendant's parcel *sub judice* to an unregistered easement. Second (and more importantly), we hold that the exceptions in subsections (A) through (F) of R.C. 5309.28 apply only to those "estates, encumbrances, and rights" that are existing at the time of original registration of title. (In the instant case, the determinative date is August 23, 1918.) We come to this conclusion by reason of the language of the section itself. It states that the original applicant shall hold title free of all "estates, encumbrances, and rights" except those noted on the certificate and those in subsections (A) through (F) that may be "existing." The inclusion in the section of the language about "every subsequent purchaser" is necessary to carry out the intent that the exceptions are applicable not just to the original registered owner but to all subsequent

bona fide purchasers for value. Also, subsection (C) provides that existing highways and public and private ways may have their existence or boundaries "determined by the court"; we believe this must refer to the court in which the land is being registered. Subsection (E) provides an exception from required notations with respect to "right of appeal within thirty days after decree of registration," a right that almost inevitably will not affect the right of any subsequent purchaser.

Furthermore, R.C. 5309.06 speaks to what estates may be registered in the first instance, and it provides, as noted above, that the following shall be memorialized on the original and duplicate certificates of title: all estates lesser than the fee, vested or contingent, private easements or other interests of any kind, mortgages, liens and charges. The section goes on to state that the registered title shall be subject only to items so noted, except as provided in R.C. 5309.28. This reference to R.C. 5309.28 is a further demonstration, we believe, that the legislature intended that the six exceptions in subsections (A) through (F) apply only to encumbrances and rights existing at the time of original registration of title.

We conclude that the integrity of the land registration law requires that all "estates, encumbrances, and rights" be noted on the register of titles before they can be recognized and enforced. The driveway *sub judice*, despite its obviousness, and the rights that would be enforceable if the land were not registered, cannot be recognized or enforced.

Defendant-appellant's single assignment of error has merit. We reverse the judgment below and remand this case for further proceedings.

*Judgment reversed and case remanded.*

SHANNON, P.J., and KLUSMEIER, J., concur.

APPENDIX A

TO DEAD END

N

E. ELSTON ROAD
(PRIVATE)

DRIVEWAY

ELLERY C. KINCAID

JOHN H YOUNT

TO BEECHMONT AVENUE

TO DEAD END