Defendant the Wolstein Group appeals from the judgment of the trial court which determined that plaintiff Panini's, Inc. (hereafter "Panini") is entitled to use a portion of defendants' property for emergency fire egress, pursuant to an implied easement. Panini cross-appeals and challenges the trial court's determination that it must reimburse the Wolstein Group for expenses incurred in altering a boardwalk in the disputed easement area in order to accommodate emergency fire egress. For the reasons set forth below, we affirm.
On May 9, 1996, Panini filed this action for injunctive and declaratory relief against 1078 Old River Road, Inc., the Wolstein Group, the Wolstein Group's partnership, East River Associates, and the City of Cleveland Department of Community Development and Division of Building and Housing. The complaint sought to preclude the Wolstein Group from obstructing fire egress from a door located in the rear of Panini's restaurant on Old River Road in the Flats area of Cleveland. It is undisputed that the Wolstein Group owns the 22' by 11' strip of land (the "strip" or "disputed easement area") immediately behind Panini. Also on May 9, 1996, Panini filed a motion for a temporary restraining order which was granted on May 15, 1996.
The Wolstein Group filed a counterclaim against Panini for slander of title, tortious interference with its contract with Dick's Last Resort, abuse of process, and trespass. Panini's lessor, 1078 Old River Road, Inc., filed a cross-claim against Wolstein Group in which it asserted that Wolstein Group interfered with its easement to the rear of the leased premises. The Wolstein Group also filed a cross-claim against this entity. Prior to trial, Panini voluntarily dismissed 1078 Old River Road, Inc. from the action and the City of Cleveland was also dismissed.
On June 16, 1997, the trial court held a hearing on the matter of the permanent injunction. Key issues included whether Panini was entitled to fire access to the strip pursuant to a license or an easement. The evidence demonstrated that prior to 1962, both the building now occupied by Panini and the strip now owned by Wolstein were a single parcel of land. In 1962, however, the Pioneer Steamship Co. conveyed the strip area to Joe Waters and the building to Metals Applied, Inc. It is undisputed that the building has rear doors which open out to the disputed easement area.
East River Associates, a partnership formed by the Wolstein Group, acquired the strip area and property adjacent to the area now occupied by Panini in 1989. This purchase was made in furtherance of the Wolstein Group's plan to construct a 300,000 square foot interconnected entertainment complex and parking area.
1078 Old River Road, Inc. acquired the building in 1981. In 1988, 123C Corporation, an entity which has subsequently merged into Panini, began occupying the building but did not use the rear portion and did not actually use the rear doors. On May 1, 1992, 123C Corporation agreed to lease the "rear two-thirds" and attached front corridor of the building from 1078 Old River Road, Inc. The lease provides for an initial term of five years and also provides for options to renew for two additional five year terms. There is a provision for water and dock access.
It is undisputed that the leased premises must have two doors, including a fire egress door and path, in order to meet the requirements of the Ohio Basic Building Code and in order to obtain a Certificate of Occupancy from the City of Cleveland. To meet the requirements for obtaining an occupancy permit, Panini requested that the Wolstein Group give it a license to use a portion of the strip as a fire egress path as long as it was an occupant of 1078 Old River Road. On August 4, 1992, Developers Diversified, a "dba" which Wolstein. Group sometimes uses, prepared a letter which provided:
Re: Fire Exit For: 1078 — 1100 Old River Road
 We the Wolstein Group agree to allow the occupants at 1078 Old River Rd. permanent access to the previously established egress path for the adjoining facilities of Headliners Niteclub and Banana Joe's Restaurant. The path which is 22' across the rear of the building and 11' on the north side of the building will continue to be maintained as a fire egress path.
On August 5, 1992, Scott A. Wolstein, then CEO of the Wolstein Group sent Panini a letter which states:
Re: Fire Exit for: 1078-1100 Old River Road
 We the Wolstein Group agree to allow the occupants at 1078 Old River Road permanent access to the previously established egress path for the adjoining facilities of Headliners Niteclub and Banana Joe's Restaurant. The path which is twenty-two feet (22') across the rear of the building and eleven feet (11') on the north side of. the building will continue to be maintained as a fire egress path.
Very truly yours,
WOLSTEIN GROUP
Later, in November 1992, the Wolstein Group recorded a Fire Access Easement which stated that the easement would expire upon the termination of the lease between East River Associates and Club Concepts of Cleveland, Inc. The Club Concepts lease terminated in 1993.
In the summers of 1994 and 1995, Panini obtained a license from Wolstein Group to use the entire strip as an outdoor dining area for its customers.
In February 1996, the Wolstein Group leased property adjacent to Panini's (to the south) to Dick's Last Resort. Pursuant to this agreement, the Wolstein Group agreed to construct a boardwalk in the strip area behind Panini's. The lease provided for a waiver of per diem rent if the Wolstein Group failed to timely complete construction of the boardwalk. The Wolstein Group also anticipated entering into a separate licencing agreement with Dick's Last Resort for use of the strip.
Dick's Last Resort received a certificate of occupancy in 1996 and the Wolstein Group commenced construction of a boardwalk two feet above ground. It is undisputed that this boardwalk interferes with Panini's access to the disputed easement area as an emergency fire exit. Construction was temporarily halted after Panini filed this action but was eventually resumed, with modifications, after the trial court granted the motion for a temporary restraining order.
On March 4, 1996, the Wolstein Group informed the City of Cleveland that it no longer permitted Panini to have fire access to the strip area. After receiving this letter, the City notified Panini that in the absence of this fire access, it was in violation of the Ohio Basic Building Code and its occupancy permit would be withdrawn.
The Wolstein Group maintained that rear egress is hazardous due to the proximity to the Cuyahoga River. It proposed that Panini build the second required egress through an adjacent building, or via a stairway to the front of the building.
The Wolstein Group also presented evidence that it altered its boardwalk in order to comply with the temporary restraining order mandating emergency fire egress. In so doing, Wolstein incurred $1228 in architect fees and $993 in construction costs. Finally, the Wolstein Group opined that the value of the rear egress fire path is $2,500 per month.
On June 26, 1996, the trial court entered judgment for Panini and determined that Panini was entitled to use the strip owned by the Wolstein group pursuant to an "easement by implication."[1]
The trial court also determined that Panini was liable to defendants in the amount of $2,216, the total cost of altering the boardwalk. Wolstein Group's cross-claims against 1078 Old River Road, Inc. were subsequently dismissed and the trial court determined that the cross-claim of 1078 Old River Road, Inc. against Wolstein Group was "decided in favor of 1078 Old River Rd. at trial." The Wolstein Group then perfected an appeal to this court, assigning four errors for our review. Panini cross-appeals, also assigning four errors.
 I. WOLSTEIN'S APPEAL
The Wolstein Group's first and second assignments of error are interrelated and state:
 THE APPLICABLE STANDARDS OF REVIEW MANDATE REVERSAL OF THE TRIAL COURT'S ORDER AND ENTRY OF JUDGMENT IN FAVOR OF THE WOLSTEIN GROUP.
 THE TRIAL COURT ERRED IN FINDING THAT THE LAW GIVES PANINI AN EASEMENT BY IMPLICATION FOR USE OF THE PROPERTY AS A FIRE EXIT.
Within these assignments of error, the Wolstein Group asserts that the trial court erred in determining that Panini demonstrated that it was entitled to use the disputed easement area for fire egress pursuant to an implied easement arising by prior use. The Wolstein Group further maintains that it is a bona fide purchaser with no notice of the easement and it is therefore unenforceable against it.
With regard to our standard of review, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Seasons CoalCo. v. Cleveland(1984), 10 Ohio St.3d 77, 79-80; Columbia GasTransm. Corp. v. Bennett(1990), 71 Ohio App.3d 307, 314.
With regard to the procedural issue of standing, we note the Restatement of Law, Property (1944) 2920, Section 456, indicates that the term dominant tenement "denotes that the possessor of the land to which it is applied has, as appurtenant thereto, an easement over the land." (Emphasis added). Our research also reveals that a lessee's claim regarding an easement will not be rejected out of hand for lack of standing where the landowner is also a participant in the action. See Louis W. Epstein FamilyPartnership v. K Mart Corp.(C.A.3 1994), 13 F.3d 762, 773-775.
In this instance, 1078 Old River Road, Inc. was joined in the action and, based upon the pleadings, clearly concurs with the arguments advanced by Panini. Indeed, the trial court concluded that the cross-claim of 1078 Old River Road, Inc. against Wolstein Group was "decided in favor of 1078 Old River Rd. at trial." We therefore are satisfied that Panini has standing in this instance.
With regard to the substantive law, an easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate. Alban v. R.K. Co.(1968).15 Ohio St.2d 229, 231.
Implied easements have been recognized since 1851. Morgan v.Mason(1851), 20 Ohio 401; Kinkaid v. Yount(1983), 9 Ohio App.3d 145,146. They are based upon the theory that whenever one conveys property he includes in the conveyance whatever is necessary for its beneficial use and enjoyment. Deyling v.Flowers(1983), 10 Ohio App.3d 19. Accord Tiller v. Hinton
(1985), 19 Ohio St.3d 66, 69 (Where the necessary elements are shown, the court may infer that the grantor and the owner of the dominant estate mutually intended that an easement on the servient estate would also be granted and also recognizes that the owner of the dominant estate has an equitable right to reform the grant).
The nature of the interest was explained in Rueckel v. TexasEastern Transmission Corp.(1981), 3 Ohio App.3d 159, 160, as follows:
 An easement implies necessarily a fee in another, and hence it is a right by reason of such ownership to use the land for a special purpose, and one not inconsistent with the general property in the land of the owner of the fee. By the same token, the owner of the land which is subject to an easement has the right to use the land in any manner not inconsistent with the easement, and this is true whether the easement is created by grant or by reservation. Not even the owner of the fee has a right to interfere with the proper enjoyment of the easement or to grant to another rights which infringe upon it. * * *" (Footnotes omitted.) See, also, Gibbons v. Ebding
(1904), 70 Ohio St. 298, 71 N.E. 720, and Pomeroy v. Salt Co.(1882), 37 Ohio St. 520; Columbia Gas Transm. Corp. v. Bennett, supra, at 319.
Implied easements may arise from existing use or necessity. SeeMartin v. Sheehy(1986). 33 Ohio App.3d 332, 334-335. Easements arising by necessity involve situations where the easement is strictly necessary in order for the owner of the dominant tenement to have any use and enjoyment of his estate. Tiller v.Hinton(1985), 19 Ohio St.3d 66, 72(Celebrezze, C.J., dissenting). Such easements must be shown to be strictly necessary to use of the dominant estate. Id.; Martin v. Sheehy,supra. Easements arising from an existing use, however, are not subject to this heightened standard, but rather, must be shown to be reasonably necessary to the beneficial enjoyment of the dominant estate. Id. However, implied easements of either kind are not favored because they are in derogation of the rule that written instruments shall speak for themselves. Tiller v. Hinton,supra; Neeley v. Green(April 15, 1991), Clermont App. No. CA90-09-089, unreported.
In Ciski v. Wentworth(1930), 122 Ohio St. 487, paragraph one of the syllabus, the Supreme Court set forth the elements required to establish an implied easement arising from an existing use as follows:
 (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only.
Accord Kamenar R.R. Savage, Inc. v. Ohio Edison Co.(1992),79 Ohio App.3d 685, 690.
It is clear, however, that an unrecorded easement is not enforceable against a bona fide purchaser who does not have actual or constructive notice of such easement. Tiller v. Hinton,supra, syllabus.
In this instance, the evidence demonstrated that there was a unity of ownership of the dominant and servient tenements prior to 1962. It is also manifest that the doors to the rear of the building exist for rear egress. With respect to whether the easement is reasonably necessary, it is clear that the parcel which Panini occupies is contiguous to the parcels to the north and south. It is not possible to exit the building to the outside via the north and south sides of the building; egress is limited to the front and rear. Moreover, the alternative fire egress paths proposed by the Wolstein Group are questionable at best. Finally, it is clear that permanent emergency fire access is required in order to obtain an occupancy permit for the building, and the Wolstein Group's own letters discuss "continuing to maintain" the fire egress path. There is therefore competent, credible evidence going to all essential elements which must be established in order to recognize the implied easement, and we are therefore unable to conclude that the trial court's recognition of the easement was erroneous.
Moreover, because the Wolstein Group's own letters discuss "continuing to maintain" the fire egress path, its contention that it was a bona fide purchaser without notice of the easement must likewise fail.
In accordance with the foregoing, the Wolstein Group's first and second assignment of errors are without merit.
The Wolstein Group's third assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO ENTER JUDGMENT AGAINST PANINI ON ITS ALTERNATIVE THEORIES.
Herein the Wolstein Group maintains that the trial court erred in failing to reject Panini's alternate theories of relief, including that it was entitled to the subject easement by prescription, by necessity, or pursuant to a license.
In this instance, the trial court stated, "[h]aving made the foregoing finding, the Court makes no finding on Plaintiff's other claimed theories of recovery." For purposes of noting our jurisdiction herein, we have concluded that the trial court's finding of an easement implied by prior use actually awards the relief which is sought in the alternative claims. Thus, Panini's alternative claims for relief are moot. State ex rel. FindlayPublishing Co. v. Hancock Cty. Bd. of Commrs.(1997), 80 Ohio St.3d 134,139; Sellman v. Schaaff(1969), 17 Ohio App.2d 69, 73. We will likewise refrain from discussing the alternate theories of relief on mootness grounds. App.R. 12(A)(1)(c).
The Wolstein Group's fourth assignment of error states:
 THE TRIAL COURT ERRED IN FAILING TO RULE IN FAVOR OF THE WOLSTEIN GROUP ON ITS CLAIM FOR DAMAGES UNDER ITS LEASE WITH DICK'S LAST RESORT.
Within this assignment of error, the Wolstein Group maintains that it is entitled to damages "as a result of the delay in the construction of the boardwalk caused by Panini's meritless claim of a right to use The Wolstein Group's property." These damages reportedly include lost per diem rent which Dick's Last Resort was excused from paying and lost opportunity to enter into a license with Dick's Last Resort for use of the boardwalk.
As set forth supra, this court has concluded that the trial court correctly determined that Panini is entitled to use the disputed easement area for emergency fire egress. The import of this ruling is that the possessor of the dominant tenement has a right to use a portion of the servient tenement for a special purpose, not inconsistent with the general nature of that land, and the possessor of the servient tenement has the right to use that land in any manner not inconsistent with the easement.Colburn v. Maynard(1996), 111 Ohio App.3d 246, 253; Rueckel v.Texas Eastern Transmission Corp., supra. Thus, the proper test for determining whether the owner of the servient estate is entitled to damages is whether the activity giving rise to the claim for damages is in fact a proper exercise of the easement rights or an infringement upon the rights of the owner of the servient estate.Id., at 159.
In this instance, the Wolstein Group's claim for damages was premised upon losses from a boardwalk which, as constructed, obstructed Panini's emergency fire access easement. Thus, the claimed damages derive simply from Panini's proper exercise of its easement and the Wolstein Group's assertion that it incurred damages as the result of Panini' s "meritless claim of a right to use The Wolstein Group's property" is incorrect. Accordingly, the trial court correctly rejected the Wolstein Group's claim for damages in this instance.
This assignment of error is without merit.
 II. PANINI'S CROSS-APPEAL
Panini's first, second, and third assignments of error are interrelated and state:
 THE TRIAL COURT ERRED IN NOT FINDING THAT PANINI HAD AN EASEMENT BY PRESCRIPTION FOR UNRESTRICTED USE OF THE STRIP IN THAT IT AND ITS PREDECESSORS HAVE USED THE EASEMENT ACROSS THE STRIP SINCE 1962, OPENLY, ADVERSELY, NOTORIOUSLY, AND CONTINUOUSLY.
 THE TRIAL COURT ERRED IN NOT FINDING THAT PANINI HAD AN EASEMENT OF NECESSITY.
 THE TRIAL COURT ERRED IN NOT FINDING THAT PANINI HAD AN IRREVOCABLE LICENSE TO USE THE STRIP AS A FIRE EGRESS.
Herein, Panini objects to the trial court's failure to conclude that it was entitled to emergency fire egress onto the disputed easement area pursuant to its alternative theories of relief, including an easement by prescription, an implied easement arising by necessity and a license.
The trial court granted the relief which was the subject of each of these claims when it determined that the possessor has emergency fire access by implied easement arising by a prior use. These alternative claims for relief are therefore moot. State exrel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.,supra; Sellman v. Schaaf, supra. Accordingly, we will not address them herein. App.R. 12(A)(1)(c).
Panini's fourth assignment of error states:
 THE TRIAL COURT ERRED IN FINDING THAT PANINI IS RESPONSIBLE FOR THE EXPENDITURES MADE BY THE WOLSTEIN GROUP IN ALTERING THE CONDITION OF THE BOARDWALK.
Within this assignment of error, Panini objects to having to pay for the Wolstein Group's installation of stairs extending from the rear of Panini's to the boardwalk. Panini asserts that these improvements were necessary only after the Wolstein Group obstructed the emergency fire egress. Panini also asserts that this claim of damages is too speculative.
Again considering whether Panini is a proper party in interest as to the reimbursement order, we note that Panini's lease with 1078 Old River Road, Inc. requires the tenant to construct all necessary improvements at its sole cost and expense.
Turning to the merits, we proceed upon the assumption that the improvements which the Wolstein Group made in order to comply with the temporary restraining order meet all fire code requirements. We also reiterate that an implied easement allows the possessor emergency fire access to the servient tenement but does not wholly preclude the owner of the servient tenement from making other uses of the property which do not interfere with the implied easement. Colburn v. Maynard, supra; Rueckel v. TexasEastern Transmission Corp. supra. Thus, we believe that the trial court's determination that Panini should pay for stairs which connect the building to the boardwalk facilitates emergency fire egress and also promotes use of the servient tenement. This order therefore reflects a proper balancing of the competing interests. The trial court's award of reimbursement is both reasonable and necessary under the circumstances presented herein.
As to the amount of such reimbursement, it is clear that damages which are purely speculative cannot be awarded. Digital Analog Design Corp. v. N. Supply Co.(1989), 44 Ohio St.3d 36,40. There must be more than a conclusory statement as to the amount and an explanation of how the claimed sum was determined is required. Cf. Rhodes v. Rhodes Indus., Inc.(1991), 71 Ohio App.3d 797,808-809. The claimed sum must be substantiated by calculations based on facts available or in evidence. Id.
In this instance, the evidence demonstrates that the architect for the Wolstein Group worked for sixteen hours designing stairs which would extend from the rear of the building to the boardwalk. His rate was $80 per hour. An additional $936 was incurred to build this walkway. Because the record clearly contains facts which indicate how the claim for damages was derived, and because there is no evidence that these sums are unreasonable under the circumstances, we are unable to conclude that the trial court erred in rendering this reimbursement award.
Panini's fourth assignment of error is without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McONAGLE, J., AND JAMES D. SWEENEY, J., CONCUR.
 ___________________________________ ANN DYKE PRESIDING JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting-brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).
[1] The trial court noted that "[h]aving made the foregoing finding, the Court makes no finding on Plaintiff's other claimed theories of recovery." For purposes of noting our jurisdiction, we interpret this as a decree that plaintiff's other claims for access to the disputed area are moot in that the trial court essentially determined these claims for fire egress access when it granted a permanent injunction; thus there is a final appealable order. 4 Ohio Jurisprudence 3d (1978) 193, Appellate Review, Section 76; Walker v. Walker(August 5, 1987), Summit App. No. 12978, unreported; Hauck Bros., Inc. v. Manuel(June 27, 1991), Clark App. No. 2768, unreported.