(No. 33652.—

COSMOPOLITAN NATIONAL BANK OF CHICAGO *et al.*, Appellants, *vs.* CHICAGO TITLE AND TRUST COMPANY *et al.*, Appellees.

*Opinion filed November 23, 1955—Rehearing denied Jan. 16, 1956.*

472

JOSEPH C. COWEN, and B. M. STEINER, (WERNER W. SCHROEDER, of counsel,) all of Chicago, for appellants.

JAMES P. CAREY, JR., of Chicago, for appellees.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

By this suit in equity the plaintiffs sought a declaration of a reciprocal easement by implication (or in the alternative, an easement by prescription) in an area located between a store building owned by them and an apartment building owned by the defendants. The cause was referred to a master who heard evidence and filed a report recommending that an easement be recognized as prayed in the complaint and that the defendants be enjoined from interfering with the plaintiffs in the use of said easement. But the superior court of Cook County sustained exceptions to the master's report and entered a decree dismissing the complaint for want of equity, thus finding no easement to exist (either by implication or prescription) in favor of the plaintiffs.

The existence of a perpetual easement being in issue, a

freehold is involved warranting a direct appeal to this court. *Walker* v. *Witt*, 4 Ill. 2d 16.

The principal party plaintiff is Joseph C. Cowen, who is the beneficial owner of a trust under which the Cosmopolitan National Bank of Chicago is trustee. The principal party defendant is William F. Carmody, who owns the beneficial interest of a certain trust under which Peter Kelley is successor trustee to the Chicago Title and Trust Company.

The plaintiffs' property, which is improved with a two-story brick building containing ten stores on the first floor and twenty-nine offices on the second, is located on the southeast corner of Pleasant Street (running east and west) and Marion Street (running north and south) in Oak Park. The defendants' property, which is improved with a three-story brick building containing approximately seventy-five apartments, is situated on Pleasant Street about 18 feet east of said store building owned by the plaintiffs.

The 18-foot area between these buildings is paved with concrete and extends south from Pleasant Street for a distance of 180 feet to a dead end. The east 12 feet 5 inches of this area is owned by the defendants in fee, and the west 5 feet 7 inches is owned by the plaintiffs, with no visible line or boundary to indicate any separation.

The area was paved in 1922, and thereafter it was used by vehicles as a driveway to serve the occupants of both buildings. In August, 1947, however, defendant Carmody blocked the driveway by placing a permanent steel post at the western extremity of his lot line and attaching thereto a chain which extended from the west wall of the apartment building. The chain was permanently affixed by lock and key and removable only under Carmody's authority. Since that time he has refused to permit the plaintiffs to make use of said area owned in fee by the defendants, and consequently vehicles have been unable to use the driveway as they had before to serve the occupants of plaintiffs'

building. This action by defendant Carmody prompted the instant suit.

The plaintiffs contend that this 18-foot area is a concrete driveway in which they are entitled to a reciprocal easement, either by implication or prescription. The defendants assert that the evidence does not establish any rights in the plaintiffs to the use of the east 12 feet 5 inches of said area.

The parties agree that the essential elements for an easement by implication (either implied grant or implied reservation) are as follows: (1) There must be a separation of title. (2) Before the separation occurs, the use which would give rise to an easement must have been so long continued, obvious or manifest to that degree which shows the use was meant to be permanent. (3) The use of the claimed easement must be essential to the beneficial enjoyment of the land granted or retained. See *Carter* v. *Michel*, 403 Ill. 610, 617, and *Walker* v. *Witt*, 4 Ill. 2d 16, 21-2.

*First*, was there a separation of title? And, if so, when did the separation occur?

On April 1, 1922, Joseph Trinz was the owner of the entire real estate here involved (*i.e.*, both the apartment property and the store property.) The land was then vacant. On that date, however, he conveyed an undivided one-half interest to Harry M. Lubliner. Three days later (on April 4, 1922), Trinz and Lubliner executed two separate trust deeds (one covering what became the apartment property and the other the store property). Then, on April 12, 1922, the village of Oak Park issued them a permit authorizing the construction of the apartment building, and on April 20, 1922, they were issued a permit by said village to construct the store building.

On May 18, 1922, Trinz and Lubliner, as incorporators, organized two separate corporations, one known as the Wis-

consin Building Corporation and the other as the Pleasant Apartments Building Corporation. Trinz and Lubliner owned all of the shares of stock equally, with a qualifying share being held by Lubliner's wife. These three were the incorporators, subscribers, stockholders and directors of both corporations. The following day (May 19, 1922), by two separate deeds Trinz and Lubliner conveyed the apartment property to the Pleasant Apartments Building Corporation and the store property to the Wisconsin Building Corporation, said conveyances made subject to the two trust deeds of April 4, 1922.

Sometime during 1922, the two buildings were constructed with said paved area between them, and for the succeeding five years Trinz and Lubliner individually paid the general real-estate taxes on both parcels of land.

Title to the properties remained the same until July 26, 1927, at which time the Pleasant Apartments Building Corporation, by deed, conveyed the apartment building property to James J. Brown.

The plaintiffs argue that for purposes of determining the instant question (*i.e.,* when the separation of title occurred), this latter date (July 26, 1927) can be used. The defendants dispute this, insisting that the separation of title occurred on May 19, 1922, the date the conveyances were made to the corporations.

Where there is a unity of ownership the owner or owners may adapt or arrange the two adjoining properties in such a way that one may be charged with the burden of a servitude for the benefit of the other. (Cf. *Carter* v. *Michel,* 403 Ill. 610.) Thus, the date the unity of ownership (and the consequent authority to arrange and adapt the properties) ceases is the point of reference in ascertaining what servitudes, if any, have been imposed.

Here, while it is true that after May 19, 1922, (the date of the deeds to the corporations), there technically

was a division of ownership in the separate corporate entities, nevertheless, until July 26, 1927 (the date of the conveyance of the apartment property to Brown, a third party) there was, in effect, common ownership of both properties sufficient to indicate the ability to arrange and adapt the property in a manner sufficient to satisfy rules of property in the establishment of easements by implication.

For while title to the two lots was transferred to the corporations by separate deeds of conveyance, Trinz and Lubliner (with Mrs. Lubliner who received a qualifying share) were the sole stockholders, directors and subscribers of the capital stock of each of these corporations, and each had the same interest in both corporations. Even after the corporations were organized, Trinz and Lubliner individually paid the real estate taxes on each parcel of property. Moreover, Trinz and Lubliner applied for and received the building permits in their individual names; and they were in charge of the management and operation of both buildings until the conveyance of the apartment property to Brown.

Under these facts, we believe the master was correct in holding that for present purposes the severance of title did not occur until July 26, 1927, the corporations being merely instrumentalities of the individuals who remained the real parties in interest with power to arrange and adapt the properties. (Cf. *Liberty National Bank* v. *Lux*, 378 Ill. 329, 332.) This view is reinforced by the fact that during this period the parties did, in fact, arrange matters by constructing said common driveway on the 18-foot strip for the use and benefit of both properties. Significantly, the defendants so recognize the realities of the situation, for they argue (upon the question of easement by prescription) as follows: "When the area in question was created by Trinz and Lubliner through the instrumentality of the two building corporations, it is plain to be seen that their interests were not antagonistic or in any sense hostile."

*Second,* before the separation occurred, was the use, which would give rise to an easement so long continued, obvious or manifest to that degree which showed the use was meant to be permanent?

This element is established by the uncontradicted testimony of witnesses who said that the use of the driveway commenced upon or shortly after the completion of the two buildings and continued until title was severed in 1927. It was shown that trucks and other motor vehicles entered the driveway daily for the purpose of serving the occupants of both the store building and the apartment building. Indeed, the driveway, paved with concrete and readily accessible from the street, continued to be so used in common until as late as August, 1947, at which time defendant Carmody obstructed the driveway.

*Third,* is the use of the claimed easement essential to the beneficial enjoyment of the land granted or retained?

It is recognized in this regard that the claimed easement need not be really necessary for the enjoyment of the estate granted or retained; but it is sufficient if it is highly convenient and beneficial. *Walker* v. *Witt,* 4 Ill. 2d 16; *Carter* v. *Michel,* 403 Ill. 610; *Koubenec* v. *Moore,* 399 Ill. 620; *Walters* v. *Gadde,* 390 Ill. 518.

It can be demonstrated from the evidence that the use of this driveway is highly convenient and beneficial to the plaintiffs.

In the first place, there is no other space available for a driveway within the confines of plaintiffs' property. For the store building at the front and on the west side abuts upon the public sidewalk and highway, and at the rear it practically touches a frame residence owned by another. It is only by using this driveway that vehicles may serve the plaintiffs' tenants without remaining parked on the public street or on the property of others.

In addition, the need for vehicles to serve the occupants of the plaintiffs' building (especially the storekeepers)

is obvious. For example, the boiler room is located at the extreme southeast corner of the building (*i.e.,* at the rear and on the side adjacent to the driveway) or more than 180 feet from the street (Pleasant Street). For years trucks used the driveway to deliver coal and to remove ashes, parking next to the door leading to the boiler room in so doing. Since the obstruction (in August, 1947), it has been necessary to dump the coal on the sidewalk in front of the building and carry it by wheelbarrows to the boiler room, all at substantially higher cost. Similarly, the cans of ashes have to be carried from the rear of the building to a truck parked in the street.

Moreover, it is highly convenient for trucks making deliveries to the stores to pull onto the driveway. In such way they avoid the traffic congestion in the streets and deliveries may then be conveniently made through entrances located at the east side of the building (the side adjacent to the driveway) rather than through the front doors used by customers.

We are thus convinced that the use of the claimed easement is highly convenient and beneficial to the plaintiffs and that this third element of their case is established also.

Having concluded that the plaintiffs are entitled to an easement by implication in the area in question, it is not necessary to consider their alternate claim for an easement by prescription.

For the reasons stated, the decree of the superior court of Cook County is reversed, and the cause is remanded, with directions to enter a decree in conformity with this opinion.

*Reversed and remanded, with directions.*