**HOUSTON BELLAIRE, LTD., Appellant,**

v.

**TCP LB PORTFOLIO I, L.P., Appellee.**

**No. 01–98–00295–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 19, 1998.

Clayton C. Cannon, Houston, for Appellant.

Todd J. Zucker, Houston, for Appellee.

Before Justices COHEN, HEDGES, and TAFT.

## OPINION

HEDGES, Justice.

Appellee, TCP LB Portfolio I, L.P., sued appellant, Houston Bellaire, Ltd., seeking a declaration that it was entitled to an easement by estoppel, implication, prescription, and necessity through property owned by Houston Bellaire, and for Houston Bellaire's tortious interference with existing and prospective business relationships. Prior to trial, TCP obtained a temporary injunction enjoining Houston Bellaire's construction of a fence that blocked the alleged easement. The trial court granted Houston Bellaire's motion for summary judgment as to TCP's easement by estoppel claim, and denied TCP's cross motion for summary judgment on the same issue.

The remaining issues were tried to the court. The trial court rendered judgment granting TCP an easement by implication and permanently enjoining the building of a fence between the properties. TCP was awarded costs and attorney fees; all other relief was denied.

In four points of error, Houston Bellaire contends that the trial court erred: (1) in its holding that unity of ownership existed at the time the dominant and servient estates were severed; (2) in its holding that there existed an apparent use between the properties at the time the dominant and servient estates were severed; (3) in applying the standard of reasonable necessity instead of strict necessity; and (4) in awarding attorney fees to TCP and not to Houston Bellaire. In two points of error, TCP contends the trial court erred: (1) in granting Houston Bellaire's summary judgment motion on the issue of easement by estoppel and (2) in denying its summary judgment motion on the same issue. We affirm.

## STATEMENT OF FACTS

This dispute involves a 7.1414 acre tract of property originally owned by Lincoln Property Co. No. 38. On September 15, 1977, Harvin Moore, as trustee, purchased the northern 2.7264 acres of the tract and obtained an option to purchase the southern 4.4150 acres. On that same day, through a series of transactions, the north tract was conveyed to Corporate Plaza Company, a Texas joint venture owned by Harvin C. Moore, Jr., Tyler D. Todd, the Ben H. Powell Trust, and the Marian Powell Trust. Each partner owned 25% of the joint venture. In 1977, this joint venture built Corporate Plaza 1, a two-story, 50,000 square foot office building.

On December 20, 1977, Lincoln conveyed the south tract to Harvin C. Moore, Trustee. On October 4, 1980, the south tract was conveyed to Corporate Plaza 2 Company, a Texas joint venture owned by Harvin C. Moore, Jr., Tyler D. Todd, and the Marian Powell Trust. Moore and Todd each owned 25% of this joint venture, and the Marian Powell Trust owned the remaining 50%.

In 1980, Corporate Plaza 2 Company developed the south tract and constructed a three-story, 100,000 square foot office building known as Corporate Plaza 2. A parking garage was built on the south side of the building because parking along the north side had been allocated to the Corporate Plaza 1 building. The main visitor entrance to Corporate Plaza 2 was situated near the entrance developed in connection with the construction of Corporate Plaza 1. When Corporate Plaza 2 was built, Corporate Plaza Company still owned Corporate Plaza 1.

Although the two tracts were owned by technically different entities, the properties were developed as part of a common plan and project. The buildings were viewed and intended as one economic unit, consisting of two phases and two buildings totaling 150,000 square feet, situated on approximately seven acres. Instead of constructing an additional drive along the north side of Corporate Plaza 2, the developers decided to widen Corporate Plaza 1's driveway, which was located between the two buildings on Corporate Plaza 1 property. The driveways to the east and west of both buildings were left open and unobstructed so that visitors to either building could reach each of the buildings from any entrance to the 7.1414 acre tract. Upon completion of Corporate Plaza 2 in 1980, use of the driveways by tenants and visitors of each building began immediately. The dual use of the driveway assisted the leasing of Corporate Plaza 2's office space.

On March 4, 1986, The Travelers Insurance Company purchased Corporate Plaza 2 out of foreclosure. Some time later, Hammerly Corporation purchased Corporate Plaza 2. Great–West Life Assurance purchased Corporate Plaza 1 out of foreclosure on March 7, 1989. Houston Bellaire purchased Corporate Plaza 1 on November 11, 1989.

In October 1996, TCP began negotiations with the Hammerly Corporation to purchase Corporate Plaza 2. Hammerly asked Houston Bellaire to execute a cross-easement between the north and south properties allowing the use of the curbcuts, parking lots, and driveways on the north property by tenants and visitors to the south property. Houston Bellaire declined and indicated that it had plans to build a wall between the properties. TCP purchased Corporate Plaza 2 on March 5, 1997.

Discussions continued between the parties. Houston Bellaire was unwilling to execute an easement agreement but offered a lease to TCP. The terms of the lease were discussed but no agreement could be reached. The dual use of the driveways, curbcuts, and parking lots continued until the time Houston Bellaire began building a fence in 1997. When Houston Bellaire started to build the fence between the properties, TCP brought this suit.

### EASEMENT BY IMPLICATION

■ The trial court rendered judgment granting TCP an easement by implication across the north tract owned by Houston Bellaire. Elements of an easement by implied grant are: (1) there was unity of ownership between the dominant and servient estate when the two were severed; (2) at the time the dominant estate was granted, there was apparent use of the easement; (3) use of the easement before the severance was continuous, indicating an intent by the owners to pass the easement by grant with the dominant estate; and (4) the easement must be reasonably necessary to the use and enjoyment of the dominant estate. *Holden v. Weidenfeller*, 929 S.W.2d 124, 128–29 (Tex. App.—San Antonio 1996, writ denied). In its first three points of error, Houston Bellaire contends the trial court erred in its holding that an easement by implication existed between the two tracts of land.

### Standard of Review

■ Houston Bellaire does not challenge the sufficiency of the evidence to support the findings of fact but instead challenges the trial court's application of the law to those facts. Conclusions of law are reviewable de novo as a question of law and will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Nelkin v. Panzer*, 833 S.W.2d 267, 268 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). Although a trial court's conclusions of law may not be challenged for factual sufficiency, the trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *National Commerce Bank v. Stiehl*, 866 S.W.2d 706, 707 (Tex.App.—Houston [1st Dist.] 1993, no writ).

### Unity of Ownership

■ In points of error one and two, Houston Bellaire argues that unity of ownership did not exist at the time users of the south tract began to use the driveways, cutouts, and parking lots on the north tract. It con-

tends that the last time unity of ownership existed over the two tracts was when the property was owned by Lincoln. When Lincoln severed the lots, the tracts were raw land, such that there was no apparent use of the easement at the time the dominant estate was created.

The trial court found that unity of ownership existed during the ownership of the north and south tracts by Corporate Plaza Company and Corporate Plaza 2 Company. During this period, the apparent use of the easement began, and it continued through the time the dominant and servient estates were severed. The trial court held that unity of ownership between the north and south tracts was severed when the south property was foreclosed upon and title passed to an entity other than the Corporate Plaza 2 Company.

Houston Bellaire argues the trial court's conclusion is wrong because the tracts were owned by two different entities: Corporate Plaza Company and Corporate Plaza 2 Company. It contends that because the ownership of the tracts was technically different, as TCP admits, unity of ownership could not exist.

The trial court found although the ownership was technically different, there was sufficient unity of ownership to support easement by implication. Houston Bellaire argues that because Texas courts have called for strict adherence to the requirements for the establishment of an easement by implication, mere similarity of ownership is not enough, citing *Ortiz v. Spann*, 671 S.W.2d 909, 911 (Tex.App.—Corpus Christi, 1984, writ ref'd n.r.e.), and *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 284 (Tex.Civ. App.—Beaumont 1976, no writ).

We disagree with Houston Bellaire that these two cases demand strict and literal compliance with each of the four elements of easement by implication. Strict adherence in this context means that all elements necessary for a finding of an implied easement are essential, and absent all the necessary elements, an implied easement cannot exist. *Holden*, 929 S.W.2d at 129. This interpretation is supported by the *Exxon* court's disavowal of a contrary inquiry, one

based primarily on the parties' intention and the circumstances surrounding the transaction. *Exxon*, 537 S.W.2d at 284 n. 2.

While Texas cases discuss the necessity of unity of ownership at the time of the severance of the estates and at the time the use is created, none discuss the requirement in the context of closely related or affiliated entities, or entities having identical majority ownership and control. TCP directs this Court to decisions from other jurisdictions that discuss unity of ownership in this context.

In *Cosmopolitan National Bank v. Chicago Title & Trust Co.*, 7 Ill.2d 471, 131 N.E.2d 4 (Ill.1955), the Illinois Supreme Court found that an easement by implication existed in a paved area between two tracts of land. Both tracts were originally owned by Joseph Trinz as one piece of property. *Id.*, 131 N.E.2d at 6. Trinz conveyed an undivided one-half interest to Harry Lubliner. *Id.* Trinz and Lubliner then executed two deeds dividing the property into two tracts, the apartment tract and the store tract. *Id.* Trinz and Lubliner then organized two separate corporations. *Id.* Trinz, Lubliner, and Lubliner's wife were the incorporators, subscribers, stockholders, and directors of both corporations. *Id.* By two separate deeds, Trinz and Lubliner conveyed the apartment tract to one corporation and conveyed the store tract to the other corporation. *Id.* Improvements were then made to each property, and the disputed area was paved. *Id.* at 7. Title to the properties remained the same for five years, at which time the apartment tract was conveyed to James Brown. *Id.* The Illinois Supreme Court held that unity of ownership existed even though the two tracts of land were owned by two separate corporations. *Id.*

While the court acknowledged that the ownership of the two lots was technically different, it held, "[t]here was, in effect, common ownership of both properties sufficient to indicate the ability to arrange and adapt the property in a manner sufficient to satisfy rules of property in the establishment of easement by implication." *Id.* The court determined that the individual shareholders re-

mained the real parties in interest with the power to arrange and adapt the properties, and in fact did arrange matters by constructing the paved area for the use and benefit of both properties. *Id.*

This decision was followed in *United States v. O'Connell,* 496 F.2d 1329 (2d Cir.1974). In *O'Connell,* the court held that sufficient unity of interest existed "among various pieces of land owned by different corporations if the corporations are owned and controlled by one or two shareholders in such a manner that they can do with all of the pieces of land as they please and if the pieces of land are not treated as being separately owned." *Id.* at 1335. Clearly, the underpinning of the unity of ownership requirement is the concept of *authority:* the ability to impress or reserve an encumbrance on property without which an easement cannot be created.

The reasoning of *Cosmopolitan* and *O'Connell* support the trial court's holding that unity of ownership existed at the time the two tracts were owned by Corporate Plaza Company and Corporate Plaza 2 Company. The ownership of the two joint ventures was sufficiently similar, the two properties were developed as part of a common plan and project, and they were intended as one economic unit consisting of two phases and two buildings situated on 7.1414 acres.

Each joint venture had similar partners. Both Moore and Todd owned 25% of each joint venture. The Ben Powell Trust owned 25% of the Corporate Plaza Company, and the Marian Powell trust owned the remaining 25% percent of that joint venture and 50% of the Corporate Plaza 2 Company. The trustees and the beneficiaries of the two trusts were identical. Moore and Todd were the managing venturers of both joint ventures. The joint ventures, acting together, made the decision to provide access to the south property through the north property. The evidence supports the holding that unity of ownership existed during the ownership of the tracts by Corporate Plaza Company and Corporate Plaza 2 Company.

We overrule point of error one.

■ Houston Bellaire's second point of error is based on its contention that unity of ownership did not exist after 1977, a time when the property was raw land. Houston Bellaire argues that an easement by implication could not be found because there was no apparent use of an easement at the time the dominant estate was granted, nor was there any use that was continuous so that the parties intended its use to pass by grant with the dominant estate. Houston Bellaire has examined the wrong time frame.

As discussed in our disposition of point of error one, unity of ownership existed at the time the tracts were owned by Corporate Plaza Company and Corporate Plaza 2 Company. Unity of ownership ceased to exist at the time the south tract was purchased from foreclosure. It is that moment at which we must determine if the easement existed because it was then that the time the dominant and servient estates were severed. *Holden,* 929 S.W.2d at 128–29. Houston Bellaire does not contest the trial court's findings that there was an apparent use of the north property by the south property at the time the south tract was purchased from foreclosure and that the use of the north property was continuous at the time the estates were severed.

We overrule point of error two.

**Standard of Necessity**

■■ In its third point of error, Houston Bellaire argues that the trial court erred in using a standard of reasonable necessity instead of strict necessity. The requirement of strict necessity applies when an easement is reserved, and the requirement of reasonable necessity applies when an easement is granted. *See Mitchell v. Castellaw,* 151 Tex. 56, 246 S.W.2d 163, 168 (Tex.1952) (discussing easement by reservation); *Howell v. Estes,* 71 Tex. 690, 12 S.W. 62, 63 (Tex.1888) (discussing easement by grant). We are confronted with an easement as yet unaddressed in Texas: the creation of implied reciprocal easements.[1]

---

1. Although neither party specifically requested reciprocal easements, the judgment of the trial court granted implied reciprocal · easements across both tracts. Therefore, we must determine what standard of necessity should apply to an implied reciprocal easement. Houston Bel-

Houston Bellaire contends that a strict necessity standard should apply to reciprocal easements, that is, when both properties benefit from an easement across both tracts at the time of severance, citing *Ward v. Slavecek*, 466 S.W.2d 91, 92 (Tex.Civ.App.—Waco 1971, no writ). TCP Argues that the standard should be that of reasonable necessity. *See James v. Gray*, 281 S.W.2d 114, 116–17 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.)

In *Ward*, the original owner of two adjacent lots built a common driveway approximately on the division line between the two properties. *Ward*, 466 S.W.2d at 92. Ward's predecessor in title purchased the property from the common owner. *Id.* The successor in title to the remaining lot, Slavecek, subsequently built a fence that made it impossible for Ward to use the driveway. *Id.* Ward sought to establish an easement by implication on the part of the driveway on Slavecek's lot. *Id.* The court held that in order for Ward to establish her easement by implication, she had to meet the strict necessity standard, which she failed to do. *Id.* (citing *Mitchell*, 246 S.W.2d at 168).

Houston Bellaire maintains that the holding in *Ward* supports its contention that a reciprocal easement must be supported by a finding of strict necessity. This analysis is wrong for two reasons. First, *Ward* does not in any way suggest that either party asserted a claim for a reciprocal easement. In fact, Slavecek's predecessors in title built a garage and began using the common driveway after Ward's predecessor in title purchased her lot. *Id.* Further, it cannot be said that Slavecek sought a reciprocal easement because Slavecek built the fence on the driveway indicating she had no need of an easement on Ward's property.

Second, we believe the court applied the wrong standard in *Ward*. Ward's lot was the dominant estate and her claim of an easement, if an easement arose at all, was a grant of an implied easement across the driveway given to her predecessor in title. Therefore, all Ward had to show was reasonable necessity. *Howell*, 12 S.W. at 63; *see also James*,

laire does not complain of the reciprocal nature of the easement, if there is to be an easement.

281 S.W.2d at 116–17 (using reasonable necessity standard in fact situation involving common driveway later obstructed by fence, citing *Howell*). *Ward*'s citation to *Mitchell* is erroneous.[2]

Although no Texas case specifically addresses what standard should apply to reciprocal easements, the comments to section 476 of the Restatement of Property provide guidance. Comment h states:

> That the conveyor and the conveyee receive reciprocal benefits from the implication of an easement in favor of each contributes to the implication. The fact that both receive benefits and neither alone suffers from the creation of the easement makes it more probable that they intended its creation. Hence, even in cases where the necessity alone would not have been sufficient to justify the implication of an easement in favor of the conveyor, the fact that the circumstances are sufficient to warrant the implication in favor of the conveyee, and that like benefits would accrue to both the conveyee and the conveyor, may justify the inference that an easement in favor of each was intended.

RESTATEMENT OF PROPERTY § 476 cmt. h (1944). This comment clearly relies on the benefits received by both parties in the case of a reciprocal easement. Even though each party can be seen as reserving an easement, the fact that like benefits accrue to both pieces of property favor a finding of an implied easement even without a finding of strict necessity. Because both parties receive mutual benefit, a party only need show reasonable necessity when, as here, there is an implied reciprocal easement. Houston Bellaire does not contest the trial court's finding of reasonable necessity.

We overrule point of error three.

## ATTORNEY FEES

 In point of error four, Houston Bellaire contends that it, not TCP, should have been awarded attorney fees. TCP

2. In *Mitchell*, the court was faced with a "reserved" easement and applied the strict necessity standard. *Mitchell*, 246 S.W.2d at 168.

brought this suit under the Texas Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (Vernon 1986). The Act provides that the trial court "may award costs and reasonable and necessary attorney fees as are equitable and just." *Id.* The determination of the amount of the attorney fees to be awarded under the Act is a question of fact for the trier of fact (trial judge or jury). *Hansen v. Academy Corp.,* 961 S.W.2d 329, 333 (Tex.App.—Houston [1st Dist.] 1997, writ denied). In a declaratory judgment case, the determination of whether to award attorney fees is solely within the discretion of the trial court. *Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637 (Tex.1996); *Hansen,* 961 S.W.2d at 333. Thus, the granting of attorney fees in a declaratory judgment action will not be overturned on appeal unless the trial court clearly abused its discretion. *Id.*

[redacted] The trial court retained the sole authority to award or deny attorney fees. *See Barshop,* 925 S.W.2d at 637.[3] Nothing in this record shows the trial court abused its discretion in refusing to award Houston Bellaire its attorney fees or in granting attorney fees in favor of TCP.

Point of error four is overruled.

## TCP'S POINTS OF ERROR

In two points of error, TCP contends the trial court erred in granting Houston Bellaire's motion for summary judgment and in denying its motion for summary judgment on the issue of easement by estoppel. TCP conditionally appealed those rulings only to the extent this Court reversed the judgment as to easement by implication. As we have overruled all points of error brought by Houston Bellaire, we need not address TCP's points of error.

## CONCLUSION

We affirm the judgment of the trial court.

[redacted]

3. The supreme court has recently developed the scope of review of attorney fees awarded under the act. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). In reviewing an attorney fee award under the Act, with a proper challenge, we must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. Houston Bellaire has not claimed the evidence was insufficient to support a finding that TCP's attorney fees were reasonable and necessary.