Opinion issued June 15, 2007






 







In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00718-CV






JON A. POTCINSKE, Appellant


V.


MCDONALD PROPERTY INVESTMENTS, LTD., Appellee






On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2004-21393






O P I N I O N


 Appellant, Jon A. Potcinske, claims that he and appellee, McDonald Property
Investments, Ltd., (McDonald Property), entered into a contract in which McDonald
Property agreed to sell 2.1 acres of real property to Potcinske. When McDonald
Property did not convey the property, Potcinske filed suit alleging breach of contract
and seeking specific performance. 

 In two issues, Potcinske appeals the trial court's judgment ordering that he take
nothing on his claims. Potcinske contends that (1) "the trial court erred by finding
that no contract was formed" and (2) "the trial court erred by finding that the contract
lacked a property description."

 We affirm.

Background


 McDonald Property owns 2.1 acres of real property located on Jones Road in
Houston ("the Jones Road property" or "the property"). David McDonald, principal
of McDonald Property, hired Clay & Company, a broker and auctioneer, to act as the
selling agent for the Jones Road property. Clay & Company listed the property for
auction along with 24 other properties. In the auction brochure, the listing for the
Jones Road property provided, "High bid subject to Seller acceptance." Potcinske
was the highest bidder for the property at the auction on April 27, 2000, bidding
$225,000. 

 Potcinske made a written offer on the property by signing and delivering to
Clay & Company an earnest money contract form entitled "Unimproved Property
Commercial Contract." The contract form provided, "CONTRACT AS OFFER: The
execution of this contract by the first party constitutes an offer to buy or sell the
Property. Unless the other party accepts by 5:00 p.m. . . . on May 8, 2000 the offer
will lapse and become null and void." (1) The contract form listed the closing date for
the sale of the property as May 30, 2000. 

 Under the heading of "financing," the contract form listed three financing
options: (1) third-party financing, (2) assumption, and (3) seller-financing. Potcinske
initialed the seller-financing option, indicating that the sales price for the property
would be financed by McDonald Property. (2) The seller financing section initialed by
Potcinske specifically provides as follows:

 4. FINANCING: Buyer will finance the portion of the sales price under
Paragraph 3B as follows: (Check all that apply.)


. . . .


 C. Seller Financing: The delivery of the promissory note and deed
of trust from Buyer to Seller under the terms of the attached
Financing Addendum in the amount of $202,500. (3)

 Clay & Company forwarded the contract form to David McDonald for his
approval and signature. After receiving the written offer, David McDonald revised
the survey terms, attached a seller-financing addendum, signed the contract form, and
delivered it back to Clay & Company. 

 On May 4, 2000, a representative of Clay & Company forwarded the revised
contract form and financing addendum to Potcinske. An accompanying cover
memorandum noted the changed survey term and stated that "the seller has attached
the Seller Financing Addendum for your signature." The cover memorandum also
requested Potcinske to initial the revised survey term and "sign the financing
addendum." 

 Potcinske did not approve the change to the survey term and did not sign the
financing addendum. Rather, on May 8, 2000, Potcinske sent correspondence to Clay
& Company in which he stated, 

 [T]he matter that was changed by the seller for the survey I re-amended
to state that I could have their [sic] existing survey ordered at my
expense. (4) Also, I have inquired [sic] my bank and a few others as to the
financing, as the amortization terms and rates may be more attractive. 
The financing disclosure will not be signed until I can determine which
way would be most beneficial, especially when considering securing a
bank loan for construction financing.

 Clay & Company obtained bids for a survey, but could not reach David
McDonald to obtain approval for the survey. No survey was performed on the
property, and Potcinske never signed the financing addendum. After 5 p.m. on May
30, 2000, David McDonald left a voice message for Clay & Company stating that he
considered "the deal to be dead" and offering to return Potcinske's earnest money. 

 On April 27, 2004, Potcinske sued McDonald Property for breach of contract,
alleging that he had an enforceable contract with McDonald Property to purchase the
Jones Road property. He alleged that McDonald Property breached that agreement
when it did not convey the property. Potcinske sought specific performance,
requesting an order compelling the transfer of the Jones Road property to him. 

 The case was tried to the bench. At trial, McDonald Property contended that
no contract existed between it and Potcinske. McDonald Property asserted that there
had been no "meeting of the minds" because the parties had not agreed on all material
terms of the contract, specifically the seller-finance and survey terms. In contrast,
Potcinske asserted that neither the survey term nor the seller-financing terms were
"material" to the formation of the contract. According to Potcinske, McDonald
Property accepted his initial written offer when David McDonald signed the contract
form. 

 Following a bench trial, the trial court signed a judgment ordering (1)
Potcinske take nothing on his claims against McDonald Property, (2) McDonald
Property to return Potcinske's earnest money, and (3) Potcinske to release all lis
pendens on the property. At Potcinske's request, the trial court filed findings of fact
and conclusions of law. 

 Regarding contract formation, the trial court filed the following pertinent
"conclusions of law":

 1. As the auction materials made clear that the high bid was subject to
seller acceptance, the auction was not an offer to sell.


 2. The initial contract signed by Potcinske was an offer to purchase
the property on Jones Road.


 3. The seller-financing term is a material term of the contract. 


 4. The survey term is a material term of the contract.


 5. McDonald did not accept Potcinske's offer to purchase the
property on Jones road; acceptance must not change the terms of
the contract.


 6. Instead, McDonald made a counter-offer to sell the Jones Road
property with a different survey term.


 7. Potcinske did not accept McDonald's offer to sell, again, because
an acceptance must not change the terms of the contract.


 8. While Potcinske may have accepted the new survey term, he
simultaneously changed or declined to proceed with the seller-financing term.


 9. During negotiations, McDonald never agreed to a cash
transaction.


 10. In fact, Potcinske never actually offered to purchase the property
for cash; he simply purported to hold his options open.


 11. Thus, the parties did not have a meeting of the mind [sic].


 12. The parties did not form an agreement for the sale/purchase of the
real estate located on Jones Road.

The trial court also concluded that, "[e]ven if the parties had agreed upon all material
terms of the real estate contract, the contract fails for the lack of an adequate property
description." 

 On appeal, Potcinske challenges the trial court's conclusions relating to
contract formation and regarding whether the contract contained an adequate property
description. 

Contract Formation


 In his first issue, Potcinske asserts, "The trial court erred by finding that no
contract was formed." To support this contention, Potcinske first challenges the trial
court's conclusion of law that the seller-financing term is a material term of the
contract. As mentioned, the trial court concluded that there was no "meeting of the
minds," in part, because the parties could not agree on the financing term. Potcinske
does not challenge the sufficiency of the evidence to support the findings of fact
underlying this conclusion of law; rather, Potcinske challenges the trial court's
application of the law to the undisputed facts.

A. Standard of Review

 We review a trial court's conclusions of law de novo as legal questions. State
v. Heal, 917 S.W.2d 6, 9 (Tex. 1996); McDermott v. Cronin, 31 S.W.3d 617, 623
(Tex. App.--Houston [1st Dist.] 2000, no pet.). In performing a de novo review, we
exercise our own judgment and redetermine each legal issue. Quick v. City of Austin,
7 S.W.3d 109, 116 (Tex. 1998). To make this determination, we consider whether the
conclusions are correct based on the facts from which they are drawn. Zieben v. Platt,
786 S.W.2d 797, 802 (Tex. App.--Houston [14th Dist.] 1990, no writ); see Houston
Bellaire, Ltd. v. TCP LB Portfolio I, L.P., 981 S.W.2d 916, 919 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). 

B. Seller Financing: A Material Term

 Parties form a binding contract when the following elements are present: (1)
an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a
meeting of the minds, (4) each party's consent to the terms, and (5) execution and
delivery of the contract with the intent that it be mutual and binding. Roman v.
Roman, 193 S.W.3d 40, 50 (Tex. App.--Houston [1st Dist.] 2006, pet. filed);
Wal-Mart Stores, Inc. v. Lopez, 93 S.W.3d 548, 555-56 (Tex. App.--Houston [14th
Dist.] 2002, no pet.). "Meeting of the minds" describes the mutual understanding and
assent to the agreement regarding the subject matter and the essential terms of the
contract. Weynand v. Weynand, 990 S.W.2d 843, 846 (Tex. App.--Dallas 1999, pet.
denied). Mutual assent, concerning material, essential terms, is a prerequisite to
formation of a binding, enforceable contract. T.O. Stanley Boot Co. v. Bank of El
Paso, 847 S.W.2d 218, 221 (Tex. 1992). 

 Here, Potcinske does not dispute that he and McDonald Property failed to have
a meeting of the minds regarding the seller-financing term. Rather, he contends that
such failure does not preclude enforcement of the contract because the seller-financing term was not a material term on which mutual assent was required to form
an enforceable contract.

 We begin our analysis by discussing case law, including our own, in which a
financing term was determined to be a material term with respect to formation of a
contract to sell real property. In Smith v. Thorne, we held that the evidence was
sufficient to support the trial court's findings that the parties had never agreed on the
financing method for the real estate transaction at issue and had no meeting of the
minds regarding financing. No. 01-01-01241-CV, 2003 WL 21357297, *3 (Tex.
App.--Houston [1st Dist.] June 12, 2003, no pet.) (mem. op.). Based on those facts,
we upheld a challenged conclusion of law providing that "[t]he parties did not reach
agreement on a material term of the contract: financing." Id.

 In Garrod Invs, Inc. v. Schlegel, the court was presented with the issue of
whether a real estate contract satisfied the Statute of Frauds. 139 S.W.3d 759, 764
(Tex. App.--Corpus Christi 2004, no pet.). There, the buyer changed the financing
terms of the signed, written offer made by the property's seller. Id. In this regard, the
court held, "These changes altered the financing provisions of the sales agreement,
which are material terms." Id. (citing Lloyd v. Holland, 659 S.W.2d 103, 105 (Tex.
App.--Houston [14th Dist.] 1983, no writ.) (holding that method of payment in that
case was material term in contract for sale of real property) and Smith, 2003 WL
21357297 at *2 (discussed above)). Because the financing terms were material, the
Garrod Investments court held that the change made to the financing terms
constituted a counter-offer, which was never accepted by the seller. Id. at 765. Thus,
the contract did not satisfy the requirements of the Statute of Frauds. Id..

 Here, to support his position that financing was not a material term to the
formation of the contract, Potcinske relies on Advance Components, Inc. v.
Goodstein, 608 S.W.2d 737 (Tex. Civ. App.--Dallas 1980, writ ref'd n.r.e.). In that
real estate case, it was undisputed that the buyer and seller had entered into a contract
for the purchase of the subject property and had agreed on the financing terms. See
id. at 738-39. The parties agreed that the buyer would assume the seller's note on the
property. Id. at 738. The buyer was unable to assume the note, but secured
alternative financing to close the transaction. Id. at 739. Because the buyer failed to
assume the note as agreed, the seller refused to convey the property, and the buyer
sued for specific performance. Id. The seller then obtained a summary judgment
against the buyer based on the buyer's breach, i.e., failure to assume the note. Id. at
738. 

 The buyer appealed. The court of appeals reversed, holding, under the facts of
that case that, the buyer's failure to comply strictly with the financing terms was not
a material breach of the already existing contract. Id. at 740. 

 As pointed out by McDonald Property, Advance Components is distinguishable
from the instant case. The court in Advance Components determined whether the
buyer's failure to perform agreed upon financing terms was a material breach of an
already formed contract. Here, we must determine whether a financing term is a
material term in the context of contract formation. We agree with McDonald
Property that different considerations come into play when determining the
materiality of a finance provision in each context. Thus, we do not find the holding
of Advance Components on point. In contrast, Garrod Investments and Smith
involved the determination of whether financing provisions were material in the
context of forming a real estate contract; accordingly, we determine that the holdings
of Garrod Investments and Smith are instructive and support a conclusion that the
seller-financing term in this case is a material term. 

 In addition, we note that the Supreme Court of Texas has instructed, "Each
contract should be considered separately to determine its material terms." (5) T.O.
Stanley Boot Co., 847 S.W.2d at 221. The Fifth Circuit Court of Appeals has
recognized that, under Texas law, essential or material terms are those that parties
would reasonably regard as vitally important elements of their bargain. Neeley v.
Bankers Trust Co., 757 F.2d 621, 628 (5th Cir. 1985). 

 In this case, the record reflects that whether the purchase would be seller
financed was an important and material element of the bargain as manifested by the
parties' focus on that provision during negotiations. In his written offer, Potcinske
initialed the seller-financing option and only that option. When responding to the
offer, David McDonald included the financing addendum and requested Potcinske to
sign it. In turn, Potcinske responded by refusing to sign the addendum until he could
determine which type of financing would "be most beneficial" to him. 

 Based on the facts of this case, we hold that the trial court properly concluded
that the seller-financing term was a material term. 

 We overrule Potcinske's first issue to the extent that he contends that the trial
court erred by concluding that the seller-financing term was a material term. (6)

Conclusion 


 We affirm the judgment of the trial court.





 Laura Carter Higley

 Justice


Panel consists of Justices Keyes, Higley, and Wilson. (7)
1. The deadline for acceptance was originally May 4, 2000. However, David McDonald
later agreed to extend the deadline to May 8, 2000. 
2. Potcinske later testified at trial that he initialed the provision because he was told by
Clay & Company to do so if he wanted to keep seller financing open as a financing
option.
3. Section 3 of the earnest money contract provided that $22,500 would be paid in cash
at closing, leaving $202,500 to be financed. At this point, the financing addendum
was not attached. 
4. At some point, a revision was made to the survey provision indicating that McDonald
Property would reimburse Potcinske for one-half of the survey cost at closing. It is
unclear from the record who made this revision, when it was made, or whether it was
ultimately agreed to by the parties.
5. Similarly, Advance Components recognizes, "The determination of whether a breach
is a material breach of the contract must necessarily turn on the facts of each case." 
Advance Components, Inc. v. Goodstein, 608 S.W.2d 737, 739 (Tex. Civ.
App.--Dallas 1980, writ ref'd n.r.e.)
. 
6. Because this subsidiary conclusion supports the trial court's ultimate conclusions that
there was no meeting of the minds and no enforceable contract between the parties,
we do not address Potcinske's other contentions challenging the trial court's judgment
found in the remainder of issue one and in issue two. 
7. The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First District of
Texas at Houston, participating by assignment.