Opinion issued July 19, 2007










 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00819-CV






K. CASEY YOUN AND CHAN J. YOUN, Appellants


V.


EMNORA HOLLISTER REALTY CORP., Appellee






On Appeal from County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 818248






MEMORANDUM OPINION


 This is a dispute over earnest money that was deposited by appellants, K. Casey
Youn and Chan J. Youn (collectively, "Youn"), in conjunction with a contract
("Contract") to purchase commercial real estate from appellee, Emnora Hollister
Realty Corp. ("Emnora"). When Youn terminated the Contract, both parties claimed
entitlement to the earnest money. After a bench trial, the trial court concluded that
Youn had failed to timely terminate the Contract and ordered that Emnora recover the
earnest money. The trial court issued findings of fact and conclusions of law.

 In four issues that can be broken down into two arguments, (1) Youn challenges
(1) the legal and factual sufficiency of the evidence to support the trial court's
finding, and the propriety of the trial court's conclusion of law, that the parties did not
modify the terms of the Contract (issues 1-3) and (2) the trial court's conclusion that
Youn breached the Contract (issue 4).

 We affirm.

Summary of Facts and Procedural History

 On April 29, 2003, Youn contracted to purchase from Emnora the Emnora
Hollister Business Park ("Property"), consisting of 33,000 square feet of office and
warehouse space located on 1.47 acres in Houston, Texas, for the total sum of
$680,000. Pursuant to the terms of the Contract, Youn deposited $10,000 in earnest
money with Chicago Title Company. The date of closing was set for June 30, 2003. 
Emnora was represented in the transaction by a real estate broker, Jeffrey C. Barbles
of Marcus & Millichap Real Estate Investment Brokerage Company. 

 Paragraph 7B(2) of the Contract provided that Youn had 30 days from the
effective date of the Contract, which was April 29, 2003, to inspect the premises and
to conduct an economic feasibility study. Paragraph 7B(3) permitted Youn to
terminate the Contract for any reason within the 30-day period by providing written
notice to Emnora. In addition, Paragraph 7B(3) provided that if Youn terminated the
Contract under that provision, Youn was to receive a refund of the earnest money,
less $100 to be retained by Emnora in consideration for the termination privilege. 
Furthermore, if Youn did not terminate the Contract within the time specified, Youn
was deemed to have "accept[ed] the Property in its present 'as is' condition." 

 To allow Youn to conduct the feasibility study, Paragraph 7B(1) required
Emnora to deliver certain items (2) to Youn within seven days after the effective date
of the Contract. The Contract required Emnora to deliver these items "to the extent
that the items are in [its] possession or are readily available to [Emnora]." Pursuant
to the Contract, "[a]ny item not delivered is deemed not to be in [Emnora's]
possession or readily available to [Emnora]."

 Paragraph 22(C) provided that the Contract constituted the entire agreement
of the parties and that the terms of the Contract could not be changed except in
writing. In addition, Paragraph 23 provided that time was of the essence and that the
parties agreed to strict compliance with the times for performance.

 During the months of negotiations leading up to the execution of the Contract,
Emnora provided to Youn certain items that were later included in the boilerplate
enumerated list in Paragraph 7 of the Contract. On May 1, 2003, Emnora submitted
to Youn certain other items from the enumerated list. 

 On May 23, 2003, Youn sent a complaint to Barbles that the rent roll submitted
by Emnora was not accurate and that Youn had been unable to conduct the feasibility
study. Youn asked Barbles to draft an amendment to the Contract providing that the
feasibility period would be extended to run for "23 days after receiving accurate
property information."

 On May 27, 2003, two days before the original feasibility period was to expire,
Barbles notified Youn by facsimile that Barbles had spoken with Emnora about
Youn's concerns and that Barbles would "get the paperwork in the form of an
addendum to extend the period necessary to get all the information together." 
However, the feasibility period expired on May 29, 2003 without an extension having
been executed by the parties. 

 Throughout the month of June 2003, Youn and Barbles continued to exchange
correspondence, and Emnora continued to provide various documentation. Barbles
exchanged correspondence with Shu Mak, Youn's loan officer at Cathay Bank, and
Vivien Wong, Mak's assistant, concerning the documentation required to process
Youn's loan, and Emnora produced various documents to Cathay. In a letter from
Mak to Barbles, dated June 20, 2003, Mak expressed an intent to close the loan as
soon as possible. There is no further correspondence in the record dated subsequent
to this letter and prior to June 30, 2003, the scheduled date for closing. The closing
did not occur.

 On July 10, 2003, Barbles and Youn visited the Property to inquire about
alleged inaccuracies in the rent rolls. During the visit, Youn learned that one of the
tenants, a marble-polishing operation, had created a potential environmental concern
because it had been injecting grinding fluid into the ground. The next day, on July
11, 2003, Youn sent to Barbles written notice terminating the Contract and requesting
the release of the earnest money. Thereafter, Emnora refused to release the earnest
money.



 On June 24, 2004, Youn sued Emnora for breach of contract, alleging that
Emnora had failed to produce the feasibility documents within seven days after the
effective date of the Contract, as required; that, although certain documents were
provided subsequent to the seven-day deadline, those documents were incomplete and
inaccurate; that Emnora had failed to disclose an environmental issue; and that
Emnora had failed to refund the earnest money upon termination, as required in the
Contract.

 On October 28, 2004, Emnora failed to appear at trial, and the trial court
rendered a default judgment, ordering that Youn was to recover the earnest money. 
On November 24, 2004, Emnora moved to set aside the default judgment on the basis
of mistake, and the trial court granted the motion. On March 3, 2006, Emnora filed
counterclaims against Youn, alleging that Youn had breached the Contract by failing
to terminate as provided in the Contract and then failing to purchase the Property. 
Emnora sought the earnest money as damages.

 On May 11, 2006, after a bench trial, the trial court awarded the earnest money
to Emnora. On June 9, 2006, Youn filed a motion for new trial, which was overruled
by operation of law. On August 4, 2006, the trial court issued findings of fact and
conclusions of law. 


 The trial court found, inter alia, that the parties had entered into a written
contract whereby Youn had agreed to purchase the Property; that Youn deposited
$10,000 in earnest money; that "in the event [Youn] failed to comply with the
CONTRACT and was in default, [Emnora] was authorized to receive the earnest
money as liquidated damages"; that Emnora was to deliver certain items to Youn
within seven days of the effective date of the Contract to the extent that those items
were in Emnora's possession or were readily available and that any item not provided
was deemed not to have been in Emnora's possession or readily available; that Youn
had been authorized to terminate the Contract for any reason within 30 days of the
effective date by providing written notice of the termination; that if Youn did not
terminate the Contract within the 30-day period, that Youn "accepted the Property in
its present 'as is' condition with any repairs [Emnora] is obligated to complete under
this Contract"; that "any changes to the CONTRACT had to be in writing"; that there
had been no "evidence of a writing that changed any of the terms of the
CONTRACT"; that there was no evidence that Youn had terminated the Contract
within 30 days of the effective date; and that there was no evidence that the Contract
had closed. 



 Based on these findings, the trial court concluded, inter alia, that (1) Youn
failed to prove that the parties modified any of the terms of the Contract and (2)
Emnora proved that Youn breached the Contract. This appeal ensued.

Modification of the Contract

 In his first through third issues, Youn challenges the legal and factual
sufficiency of the evidence to support the trial court's finding, and the propriety of
the trial court's conclusion of law, that the parties did not modify the terms of the
Contract.

A. Standards of Review 

 Findings of fact in a bench trial have the same force and dignity as a jury's
verdict upon jury questions. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994);
In re K.R.P., 80 S.W.3d 669, 673 (Tex. App.--Houston [1st Dist.] 2002, pet. denied). 
When challenged on appeal, the findings are not conclusive if there is a complete
reporter's record, as there is here. In re K.R.P., 80 S.W.3d at 673. A trial court's
findings are reviewable for legal and factual sufficiency of the evidence under the
same standards that are applied in reviewing evidence supporting a jury's answer. 
Catalina, 881 S.W.2d at 297. 

 In a legal-sufficiency review, we view the evidence in the light most favorable
to the verdict and indulge every reasonable inference that supports the verdict. City
of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005). We must credit evidence that
supports the judgment if a reasonable fact-finder could and must disregard contrary
evidence unless a reasonable fact-finder could not. See id. at 827. If the evidence
falls within the zone of reasonable disagreement, we cannot substitute our judgment
for that of the fact-finder. Id. at 822. Unless "there is no favorable evidence . . . or
if contrary evidence renders supporting evidence incompetent . . . or conclusively
establishes the opposite," we must affirm. See id. at 810-11. "The final test for legal
sufficiency must always be whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review." Id. at 827. When, as in this
case, an appellant attacks the legal sufficiency of an adverse finding on an issue for
which it had the burden of proof--here, that a modification occurred--he must
demonstrate on appeal that the evidence conclusively established all vital facts in
support of the issue. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001);
City of Pasadena v. Gennedy, 125 S.W.3d 687, 692 (Tex. App.--Houston [1st Dist.]
2003, pet. denied). 

 In reviewing a factual-sufficiency challenge to a finding on an issue on which
the appellant had the burden of proof, the appellant must show that "the adverse
finding is against the great weight and preponderance of the evidence." Francis, 46
S.W.3d at 242. We consider and weigh all of the evidence and set aside the adverse
finding only if it is so against the great weight and preponderance of the evidence that
it is clearly wrong and unjust. Id. 

 In an appeal from a bench trial, we review a trial court's conclusion of law de
novo, and we uphold the conclusion if the judgment can be sustained on any legal
theory supported by the evidence. BMC Software Belgium, N.V. v. Marchand, 83
S.W.3d 789, 794 (Tex. 2002); Houston Bellaire, Ltd. v. TCP LB Portfolio I, L.P., 981
S.W.2d 916, 919 (Tex. App.--Houston [1st Dist.] 1998, no pet.). Although a trial
court's conclusion of law may not be challenged for factual sufficiency, we may
review the legal conclusion drawn from the facts to determine whether the conclusion
is correct. BMC Software Belgium, N.V., 83 S.W.3d at 794; Houston Bellaire, Ltd.,
981 S.W.2d at 919.

B. The Law

 In construing contracts, our task is to ascertain and to give effect to the
intentions of the parties as expressed in the contract. Kelley-Coppedge, Inc. v.
Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). We give terms their plain,
ordinary, and generally accepted meaning, unless the instrument shows that the
parties intended them in a different sense. Heritage Res., Inc. v. NationsBank, 939
S.W.2d 118, 121 (Tex. 1996). When a written contract is worded so that it can be
given a definite legal meaning or interpretation, we construe it as a matter of law and
enforce it as written. Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex.
2003); Phillips Petroleum Co. v. St. Paul Fire & Marine Ins. Co., 113 S.W.3d 37, 40
(Tex. App.--Houston [1st Dist.] 2003, pet. denied).

 "Whether a contract is modified depends on the parties' intentions and is a
question of fact." Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 228-29 (Tex. 1986);
see Ghidoni v. Stone Oak, Inc., 966 S.W.2d 573, 581 (Tex. App.--San Antonio 1998,
pet. denied). The party asserting contractual modification bears the burden to prove
that the other party had notice of the change and accepted the change. Hathaway, 711
S.W.2d 227 at 229; Ghidoni, 966 S.W.2d at 581.

C. Analysis

 The evidence reflects that Paragraph 7B(2) of the Contract provided that Youn
had 30 days from the effective date of the Contract to inspect the premises and to
conduct an economic feasibility study. Paragraph 7B(3) permitted Youn to terminate
the Contract within that 30-day period, for any reason, by providing written notice to
Emnora. In the event that Youn terminated under this provision, Youn was to receive
a refund of the earnest money, less $100 in consideration for the termination
privilege. If Youn did not terminate within the time permitted, Youn was deemed to
have "accept[ed] the Property in its present 'as is' condition." Paragraph 22(C)
provided that the Contract constituted the entire agreement of the parties and that it
could not be modified except by written agreement of the parties. In addition,
Paragraph 23 provided that time was of the essence and that the parties agreed to
strict compliance with the times for performance. It is undisputed that the parties did
not execute a written agreement extending the feasibility period beyond the original
deadline of May 29, 2003. 

 Youn nonetheless contends that the parties agreed to modify the Contract by
extending the feasibility period. Youn points to a letter that it sent to Barbles on May
23, 2003, in which Youn alleged that the rent roll that Emnora had provided was not
accurate and that the feasibility study could not be conducted. In the letter, Youn
asked Barbles to draft an amendment to the Contract extending the feasibility period
for "23 days after receiving accurate property information." Youn points to a letter
that it received from Barbles on May 27, 2003, two days before the original feasibility
period was to expire, in which Barbles stated that he had spoken with Emnora about
Youn's concerns and stated, "I will get the paperwork in the form of an addendum to
extend the period necessary to get all the information together." 

 The Contract clearly provided that its terms could not be modified except by
written agreement of the parties, Youn and Emnora, and it is undisputed that a written
extension was not executed. Barbles's prospective statement of intent to seek an
extension from the seller, Emnora, does not constitute evidence that Emnora had in
fact agreed to an extension of the feasibility period of the Contract. (3) 

 Youn contends that a June 3, 2003 email in which Barbles stated that he would
procure estoppel certificates "after the earnest money has gone hard" is evidence that
the parties were operating under an extension of the feasibility period after the May
29, 2003 expiration date. Although the timing of Barbles's statement could be
construed as showing his belief that the earnest money remained pending after May
29 and that he anticipated that an extension was forthcoming, this statement does not
constitute evidence that the seller, Emnora, had in fact agreed to an extension of the
feasibility period. Manoucher Malekan, the owner of Emnora, testified that, when he
was approached for an extension to the feasibility period, he declined because Youn
had already had the materials at issue for a long time.

 Youn contends that Emnora's continued production of materials due under
Paragraph 7 of the Contract, notwithstanding that the original date for inspection had
expired, constitutes evidence that the terms had been modified. However, Malekan
testified that Emnora produced certain items to Youn and to the lender after May 29,
2003 because the feasibility period had closed and the transaction was moving
forward. This testimony is supported by evidence in the record that, throughout the
month of June, Barbles and Youn corresponded with Youn's loan officer, Mak, at
Cathay Bank, and Emnora provided documentation to Cathay to support Youn's loan.
A letter by Mak to Barbles, dated June 20, 2003, indicates that Cathay Bank was
trying to close Youn's loan at that point.

 Viewing the evidence in the light most favorable to the judgment and indulging
every reasonable inference that supports the judgment, we conclude that this evidence
would enable reasonable and fair-minded people to reach the conclusion that the
parties did not modify the terms of the Contract. See City of Keller, 168 S.W.3d at
822. We cannot conclude that Youn met its burden to establish conclusively all vital
facts in support of the issue: namely, that Emnora accepted a change to the feasibility
period. See Francis, 46 S.W.3d at 241; Hathaway, 711 S.W.2d 227 at 229; Ghidoni,
966 S.W.2d at 581. Therefore, we hold that the evidence is legally sufficient to
support the trial court's finding that the parties did not modify the terms of the
Contract. 

 Youn also challenges the factual sufficiency of this same evidence to support
the trial court's finding that the parties did not modify the terms of the Contract. (4) 
After considering all of the evidence of modification in the record for factual
sufficiency, we cannot conclude that the trial court's finding that the Contract was not
modified is against the great weight and preponderance of the evidence. See Dow
Chem. Co., 46 S.W.3d at 242; Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445
(Tex. 1989). Therefore, we hold that the evidence is factually sufficient to support
the trial court's finding that the terms of the Contract were not modified.

 Furthermore, from these facts, we hold that the terms of the Contract were not
modified and accordingly affirm the trial court's conclusion of law holding the same.

 We overrule Youn's first, second, and third issues.

Breach of Contract 

 In its fourth issue, Youn challenges the trial court's conclusion that Youn
breached the Contract.

 Whether a party has breached a contract is a question of law for the trial court,
which determines what the contract required of the parties as a matter of law. See 
BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Trafalgar Holdings I, Ltd., 218 S.W.3d
137, 146 (Tex. App.--Houston [14th Dist.] 2007, pet. denied); Meek v. Bishop
Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex. App.--Houston [14th Dist.]
1996, writ denied). When the terms of the contract are clear and unambiguous, and
the facts concerning performance or breach are undisputed or conclusively
established, the trial court determines, as a matter of law, whether the facts show
performance or breach. See Meek, 919 S.W.2d at 808. We review questions of law
de novo. Trafalgar Holdings I, Ltd., 218 S.W.3d at 143.

 Here, the record shows, and the trial court found, that Youn agreed to purchase
the Property pursuant to the terms of the Contract, that any termination of the
Contract by Youn was required to occur on or before May 29, 2003, and that Youn
failed to terminate the Contract by that date. Because Youn did not timely terminate,
Youn was deemed, pursuant to Paragraph 7, to have "accept[ed] the Property in its
present 'as is' condition," as the trial court found. The record also shows, and the
trial court found, that Youn failed to purchase the property. 

 Youn contends that, under the circumstances of this case, its performance was
excused. Generally, a material breach by one party to a contract can excuse the other
party from the obligation to perform and is generally a question of fact. Mustang
Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 196 (Tex. 2004). Construing
the briefs liberally, it appears that Youn contends that Emnora failed to produce the
materials required under Paragraph 7 of the Contract in a timely manner and thus
Emnora "could not enforce the 'as is' and 'drop dead' provisions of that same
section" of the Contract. However, the record shows, and the trial court found, that
the Contract merely required Emnora to deliver those items "to the extent that the
items [were] in [its] possession or [were] readily available to [Emnora]" and that
"[a]ny item not delivered [was] deemed not to be in [Emnora's] possession or readily
available to [Emnora]." In addition, Malekan testified at trial that, by the time that 
the Contract was executed, many items had already been produced to Youn during the
negotiations period. Those items that remained outstanding were produced as quickly
as possible. Malekan's property manager had recently passed away, and some
information was not readily available.

 Based on the trial court's findings, we conclude that the trial court's conclusion
that Youn breached the Contract is supported by the evidence and is not erroneous. 

 Accordingly, we overrule Youn's fourth issue.





Conclusion

 We affirm the judgment of the trial court.

 



 Laura Carter Higley

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.



1. " 
 " " 
' 
 " " '
 
 " " ' 
 " 
 - - 
2. 
 
 
 
 
 
 
 
 '
 
 
 
 "-" 
 
 
 ' 
 
 
 
3. ' 
 
 
 -- 
 
4. 
- -